Joseph D. TAWNEY, Jr., Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 680S176.

Supreme Court of Indiana.

Sept. 2, 1982.

Rehearing Denied Dec. 3, 1982.

Bruce A. Dumas, Valparaiso, for appellant.

Linley A. Pearson, Atty. Gen., Gordon R. Medlicott, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was convicted of Robbery, Ind. Code § 35–42–5–1 (Burns 1979) and Battery, Ind. Code § 35–42–2–1 (Burns 1979) and was sentenced to a total of thirty (30) years imprisonment. This direct appeal seeks review upon the following issues:

(1) Whether the trial court erred in denying Defendant's motion to dismiss the jury venire prior to trial.

(2) Whether the trial court erred in admitting Defendant's statement to the police into evidence.

(3) Whether the evidence was sufficient to sustain the verdicts.

(4) Whether the trial court erred in not giving the Defendant's tendered instructions.

(5) Whether the trial court erred in sentencing the Defendant for both Robbery and for Battery.

On October 7, 1979, the defendant was walking with Jeffery Beal, age 12, when they saw William Butt, a mutual acquaintance. The defendant said to Beal that he knew "where we can get some money." The two youths then asked Butt for a ride in his automobile and Butt assented.

Shortly thereafter, the trio drove to Michigan, obtained a "six-pack" of beer and began drinking the contents. There is a dispute as to whether or not the three males returned to Michigan after the beer had been consumed, purchased a "twelve-pack" of beer, and proceeded to drink the contents. After riding around for awhile, Butt stopped the automobile at a rest stop. When Butt returned to the automobile, he let the defendant drive the car while he sat in the passenger seat and Beal sat in the rear seat. Beal testified that a verbal fight broke out between himself and Butt and that when the Defendant took his hands off the steering wheel to intercede, the car veered into a ditch.

Butt attempted to push the car out of the ditch, at which time the defendant seized him from behind and stabbed him repeatedly with a knife. The defendant then turned Butt over, removed his wallet, and tried to hide the body among nearby bushes. The two youths then fled but were stopped about one hour later by the police on the same highway and arrested for public intoxication. In the interim, Butt reached a nearby farmhouse, where he received medical attention.

\* \* \* \* \* \*

ISSUE I

Defendant contends that he was denied a fair trial when his motion to dismiss the jury venire was denied following a hearing. At the hearing, Defendant argued that the jury venire selection from property tax rolls resulted in the systematic exclusion of eighteen to twenty-four year olds from the venire and constituted a denial of equal protection.

The standard to which jury selection must conform is aptly stated in *Duren v. Missouri*, (1979) 439 U.S. 357, 364, 99 S.Ct. 664, 668, 58 L.Ed.2d 579, 586–87:

"In order to establish a prima facie violation of the fair cross-section requirement, the Defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to the systematic exclusion of the group in the jury selection process."

Defendant presented statistics evidencing the actual number and percentage of eighteen to twenty-four year old persons in Porter County and the number of jurors

in that age group over a period of five years. He demonstrated that this group generally are not home owners who would appear on property tax rolls. Although these statistics do demonstrate a discrepancy between the cross-sectional makeup of venires and the population eligible for jury service, there is no requirement for the makeup of a jury to mirror the makeup of the community and actually to reflect the various distinctive groups in the population. *Taylor v. Louisiana*, (1975) 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690, *Daniels v. State*, (1980) Ind., 408 N.E.2d 1244, 1247. As in our recent decision in *Grassmyer v. State*, (1981) Ind., 429 N.E.2d 248, 251, which involved a similar challenge to the jury selection process of Porter County, there is "no showing that eighteen to twenty-four year olds are a group distinct from the rest of society in a significant way, having interests which cannot be adequately represented by other members of the jury panel."

The Defendant also argues that defendants with privately employed counsel were able to secure a special venire compiled from a list other than the property tax rolls, while indigent defendants were confined to panels drawn only from the property tax rolls. However, defendant has failed to support this contention. In one instance to which he makes reference, the record demonstrates the request for a special venire was never ruled upon; and in another instance cited, the record reveals that the motion for the special venire was denied. Defendant's contention is without support.

The defendant next argues that this Court held in *State ex rel Brune v. Vanderburgh Circuit Court*, (1971) 255 Ind. 505, 265 N.E.2d 524, that property tax rolls may not be used in jury selection, if a representative cross-section did not result. In *State ex rel Brune*, we were called upon to review the use of voter registration lists for selecting veniremen as ordered by the Circuit Court and occasioned by the Legislature's repeal of the general personal property tax. While we noted approval of such jury selection as meeting the constitutional purpose of providing litigants with a fair and impartial jury, we cast no judgment of the practice, elsewhere, of selecting veniremen solely from real property tax rolls.

■ The defendant next challenges the venire selection process by arguing that Ind.Code § 33–4–5–2 (Burns 1979) requires that the selections be proportional to each jury commissioner's district. The Porter County jury commissioners used district voter registration figures to establish jury selections, and did not use federal census figures. While census figures may offer a more complete data base, in developing selection lists by voter districts, the commissioners' method substantially complied with the requirements of the statute and was likely to result in a properly proportioned selection. Defendant cites *State ex rel Burns v. Sharp*, (1979) Ind., 393 N.E.2d 127, in support of its contention that the ratio of prospective jurors from each district should have been determined by reference to the most recent United States census figures. *Sharp* approved such method, as have other cases, but we are aware of no mandate of such method.

Defendant next contends that Ind.Code § 33–4–5.5–9 requires the selection process to be a purely random one and that the Porter County process specifically violated the procedures prescribed by the statute. However, this statute, by its terms, applies only to counties having a population between 500,000 and 600,000 and Porter County is not such a county.

The trial court properly found that the jury venire was drawn from a source fairly representative of Porter County and properly denied the motion to dismiss the jury panel.

## ISSUE II

Defendant contends that his statement given to police following his arrest was obtained in violation of his Fifth Amendment rights, as it was given involuntarily and without an intelligent waiver.

Officer Andrew testified at the pre-trial suppression hearing that the defendant was arrested for public intoxication, and in-

formed of his constitutional rights, that he indicated that he understood him then told him of the incident with Butt. Andrews testified that he had believed that Defendant was intoxicated at the time and that no attempt to question him was then made.

The defendant was then brought to police headquarters where Officer Pinnell again informed Defendant of his constitutional rights. Officer Pinnell testified that he then questioned the defendant and he did not believe that he was under the influence of alcohol. He added that the defendant gave a written waiver of his rights and then proceeded to state orally that he had been involved in an incident with Butt. The defendant later gave a written statement to the same effect. Pinnell stated that the defendant appeared to understand his questions, that his responses were rational and coherent, and that although the defendant said he had been drinking, he appeared to have full use of his faculties.

■ The State bears a heavy burden of proving, beyond a reasonable doubt, that the confession was voluntary; that is, that the defendant knowingly, voluntarily and intelligently waived his right to remain silent and to consult with counsel. *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; *Kizer v. State*, (1979) Ind., 392 N.E.2d 466. The traditional standard which the trial court must use in resolving the question of admissibility is aptly stated in *Johnson v. Zerbst*, (1938) 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461:

"A waiver is ordinarily an intentional relinquishment of a known right or privilege. The determination of whether there has been an intelligent waiver * * must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

■ When reviewing the denial of a motion to suppress a confession and the admission of that confession at trial, we do not reweigh the evidence. Rather, we look to the evidence supportive of the trial court's ruling to determine if it was substantial and probative and hence sufficient to sustain that ruling. *Jackson v. State*, (1981) Ind., 411 N.E.2d 609, *Murphy v. State*, (1977) 267 Ind. 184, 369 N.E.2d 411.

■ The defendant had been fully informed of his constitutional rights and acknowledged that he understood them. The Defendant asserts that this acknowledgment was not intelligently made nor was it voluntary in that his consumption of alcohol in the hours prior to giving the statement impaired his ability to understand the consequences of his waiver. However, Defendant's statement was given to Officer Pinnell a minimum of two hours after his last consumption of beer. Specific acknowledgment by the defendant that he knew his rights and that he, nevertheless, waived their application to him is a strong factor supporting a finding of a voluntary waiver and a voluntary confession. *See Works v. State*, (1977) 266 Ind. 250, 362 N.E.2d 144.

■ We find no error in the admission of the statements, inasmuch as the evidence clearly sustained the ruling of the trial court.

### ISSUE III

Defendant next challenges the sufficiency of the evidence to support the convictions for Robbery and for Battery, and argues that the evidence supports his defense that he was acting in self-defense and was intoxicated.

■ Defendant presented no evidence to support his contentions that he lacked the specific intent to rob the victim, that he stabbed the victim only in self-defense, and that he was intoxicated to such extent as to be unable to form the requisite intent to commit robbery and battery. The only evidence presented—testimony from Beal about a pre-robbery intent coupled with the method by which William Butt was robbed—not only permitted the jury to find that the use of force by the defendant was not justified, but also allowed the jury to find the existence of an intent to rob and the deliberate attempt to effectuate that intent.

■ Furthermore, whether the defendant was so intoxicated so as to be incapable of forming the requisite intent is a question of fact for the jury to resolve and one upon which the defendant bears the burden of proof. *Moon v. State*, (1981) Ind., 419 N.E.2d 740. Upon this issue, defendant stands in the position of one appealing from a negative verdict. " 'A decision of a trial court against the party bearing the burden of proof will not be set aside on appeal unless the evidence is without conflict and leads unerringly to a result not reached by the trial court.' " *Delph v. State*, (1980) Ind., 401 N.E.2d 700, 701. It cannot be said that there was no conflict in the evidence upon this issue.

### ISSUE IV

Defendant assigns, as error, the refusal of the trial court to give four of its tendered final instructions, said instructions relating to: (A) defendant's pre-trial statement, as evidence, (B) theft, as a lesser included offense of the crime charged, (C) self-defense and (D) intoxication, as a defense to the crime charged.

"* * * In determining whether an instruction has been properly refused, we must determine:

" '(1) whether the tendered instruction correctly states the law, (2) whether there is evidence in the record to support the giving of an instruction, [and] (3) whether the substance of the tendered instruction is covered by other instructions which are given.' " (citation omitted) *Spears v. State*, (1980) Ind., 401 N.E.2d 331, 334.

### (A)

■ Defendant's tendered instruction purported to advise the jury of the weight it should give to the defendant's pretrial statement and specific factors that it should consider, such as "age," "training," "sex," "education," etc. in determining whether or not the statement had been made "knowingly," was properly refused. Instructions that single out particular evidence and exhorts the jury to receive it with caution or indicate an opinion of credibility or weight invade the province of the jury and should be refused. *Taylor v. State*, (1972) 257 Ind. 664, 278 N.E.2d 273, *Hackett v. State*, (1977) 266 Ind. 103, 360 N.E.2d 1000. "Instructions generally should state propositions of law and those that do not but are mere statements for the philosophical guidance of the jury are rarely beneficial, frequently troublesome and best avoided." *Walker v. State*, (1976) 265 Ind. 8, 11, 349 N.E.2d 161, 164.

### (B)

■ Defendant's tendered instruction upon theft was properly refused because inapplicable to the evidence. It is not enough that the lessor offense be included within the offense charged, but there must also be evidence from which the jury could properly find that the lesser offense was committed while the greater was not. The State's evidence revealed that the theft that occurred was merely a part of the robbery. The defendant offered no evidence. The tendered instruction was not applicable and could only have been a plea for a compromise verdict. *Hash v. State*, (1972) 258 Ind. 692, 284 N.E.2d 770; *Hester v. State*, (1974) 262 Ind. 284, 315 N.E.2d 351, *Lawrence v. State*, (1978) 268 Ind. 330, 375 N.E.2d 208.

### (C) & (D)

■ It is highly questionable that instruction on either self-defense or intoxication was warranted under the evidence. In any event, the court did give a proper one upon each subject. The refusal of a tendered instruction is not error if the substance thereof is covered by other instructions. *Tolbert v. State*, (1979) Ind., 391 N.E.2d 823.

### ISSUE V

■ We agree with defendant that under *Elmore v. State*, (1978) 269 Ind. 532, 382 N.E.2d 893, his sentence upon the battery charge should be vacated, notwithstanding that it would run concurrently with the sentence upon the robbery charge, inas-

much as the judgment made no provision for consecutive sentences.

"* * * The so called *Blockburger* [*v. United States*, 284 U.S. 299, 52 S.Ct. 180, 75 L.Ed. 306] test was recently reaffirmed and further developed in *Brown v. Ohio*, (1977) 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187, 194. In holding that under the *Blockburger* test a lesser included offense is the same as the greater offense, the *Brown* court stated: 'This test emphasizes the elements of the two crimes. "If each requires proof that the other does not, the *Blockburger* test would be satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes * * *" ' " (citation omitted) 269 Ind. 532, 534–35, 382 N.E.2d 893, 895.

■ In applying the test, however, we must look to the manner in which the offenses are charged and not merely to the statutory definitions of the offenses, as we do in determining the entitlement to an instruction on necessarily included offenses; *Lawrence v. State*, (1978) 268 Ind. 330, 375 N.E.2d 208.

Omitting the formal portions, the informations were as follows:

### Robbery—Class A Felony

"Joseph D. Tawney, Jr. * * * did knowingly or intentionally take property from another person, to-wit: took a wallet with an undetermined amount of money from William Butt, by using force on the said William Butt, said offense being a Class A felony in that it resulted in bodily injury to the said William Butt, * * *."

### Battery—Class C Felony

"Joseph D. Tawney, Jr. * * * knowingly or intentionally touch another person in a rude insolent or angry manner, to-wit: William Butt, said offense being a Class C felony because it was committed by means of a deadly weapon, to-wit: a knife, * * *."

From an examination of these charges, it is apparent that the battery charged was the "force" allegedly employed in the commission of the robbery charged. The battery was not merely an offense that oc-curred in the same criminal episode, it was a necessary element of the robbery, *as charged.*

The cause is remanded to the trial court with instructions to vacate the sentence upon the battery charge. In all other respects, the judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.