**Gladys LOMAX, Appellant
(Defendant Below),**

v.

**STATE of Indiana, Appellee
(Plaintiff Below).**

**No. 53A01–8612–CR–326.**

Court of Appeals of Indiana,
First District.

July 15, 1987.

David J. Colman, Colman & Carter, Bloomington, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

ROBERTSON, Judge.

Appellant-defendant Gladys Lomax appeals her conviction of neglect of a dependent, a class D felony.

We affirm.

On September 20, 1984, Bloomington police received a report of windows being broken at 404 South Washington Street, a residence owned by Gladys Lomax. When Officer Robert Neely arrived, he observed several windows broken apparently from the inside, because the glass was lying on the ground outside the house. Neely could see a man with a long beard inside the house, clad in a T-shirt only. Neely surmised that Gladys lived in the home, having seen her on the porch on several occasions. Assuming the man inside was an intruder, he radioed for help. Officer Hunter arrived shortly. The officers attempted to speak to the man through a window but they could get no response. He eventually retreated into the house where the officers could no longer see him. Finding the front door locked, Neely hoisted Hunter through the open window. Once inside, Hunter opened the front door for Neely.

The officers found the man they had seen earlier on a bed in the west portion of the house. The man was cowering on the bed and was unable to answer the officers' questions. The police reported seeing feces on the bed and stains which they believed to be urine. Also, feces appeared to be smeared on the wall by the bed. The man, later identified as Mark Lee Lomax, the son of Gladys, had excrement on his legs. The house smelled strongly of waste, and the room was teeming with flies. Garbage and trash had accumulated throughout the house, leaving only a path through which the officers could walk.

Gladys drove up to the house while the police were there; she admitted that she owned the home and that the man inside was her son. After back-up officers had secured the house, Neely left to obtain a search warrant. When the officers arrived with the search warrant, they noticed that Mark had been cleaned up and was wearing trousers. With Gladys' help, the police were able to coax Mark into a police car, and he was taken to Bloomington Hospital.

Gladys was charged with neglect of a dependent and found guilty after a jury trial.

Gladys presents for review four issues:

I. Whether the trial court committed reversible error in permitting the expert testimony of Dr. Kissell?

II. Whether the trial court committed reversible error by refusing to exclude Sharon Groeger's testimony as a sanction for the State's failure to give the defense her statement?

III. Whether the verdict is supported by sufficient evidence?

IV. Whether the trial court committed reversible error in overruling Gladys' motion to suppress?

ISSUE I.

Gladys lodged three objections to Dr. Kissell's testimony. First she contends that his testimony should not have been allowed because Dr. Kissell's name did not appear on the State's witness list. The State concedes that Dr. Kissell's name was never added to its list of witnesses. Instead, the State informed the defense the day before Dr. Kissell was to testify that the State would call him.

■■■ After Gladys objected to Dr. Kissell's testifying, the court granted the defense a recess in order for defense counsel to interview Dr. Kissell. After court reconvened, counsel for Gladys did not renew his objection based upon the State's failure to comply with discovery. Since Gladys did not renew her objection or otherwise in-

form the court that the recess did not cure the State's transgression, then the issue is waived. Even after a consideration on the merits, we find no reversible error. The trial court has discretion to remedy any transgressions of discovery orders. *Harris v. State* (1981), Ind., 425 N.E.2d 112; *Carson v. State* (1979), 271 Ind. 203, 391 N.E.2d 600. Sanctions are discretionary, not mandatory. *Rowley v. State* (1979), 271 Ind. 584, 394 N.E.2d 928. The proper remedy for the State's failure to comply with a discovery order is a continuance unless the State's failure to produce is so misleading or demonstrates such bad faith that exclusion of the evidence is the only way to preserve a defendant's right to a fair trial. *Bieghler v. State* (1985), Ind., 481 N.E.2d 78; *Riley v. State* (1982), Ind., 432 N.E.2d 15. Gladys has not demonstrated how the State's late substitution of expert witnesses was so misleading or demonstrated such bad faith that the recess was an improper remedy.

▪ Dr. Kissell was permitted to testify regarding his observation of Mark Lomax on June 10, 1985, about nine months after the events leading to the neglect charge. Gladys contends that this testimony was irrelevant to any material issue in this case. Rulings of the trial court as to relevancy of evidence are accorded wide latitude, and are reviewable only for abuse of discretion. *Neaveill v. State* (1985), Ind. App., 474 N.E.2d 1045. Evidence is relevant, and therefore admissible, if it tends to prove or disprove a material fact or sheds any light on the guilt or innocence of the accused. *Cox v. State* (1985), Ind., 475 N.E.2d 664, 672. Furthermore, evidence which would otherwise be admissible may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. A trial court is given wide latitude in weighing the probative value of evidence with respect to a material fact as against the possible prejudice of its admission in a criminal proceeding.

*Hutchinson v. State* (1985), Ind., 477 N.E.2d 850, 854.

▪ After rendering an opinion regarding Mark's mental condition in September 1984 based on other doctors' examinations of Mark in September 1984, Dr. Kissell testified that his first direct contact with Mark occurred on June 10, 1985, pursuant to Mark's convalescent leave from Madison State Hospital. He then testified that his evaluation of Mark in June 1985 was consistent with the evaluation he had made based on the records of September 1984. Evidence as to Dr. Kissell's later consultation with Mark tended to buttress Dr. Kissell's opinion regarding Mark's mental disability in September 1984, his disability and resulting dependency being material issues of fact.[1] Moreover, we can discern no undue prejudice to Gladys resulting from testimony of her son's ongoing mental infirmity. The evidence being relevant, there was no error in admitting it.

▪ Gladys' final argument for the exclusion of Dr. Kissell's testimony is that she was a patient of Dr. Kissell and therefore could assert a privilege as to the doctor's testimony. Under IND.CODE 34-1-14-5(4), physicians are not competent witnesses "... as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases...." Whether or not a physician will be permitted to testify concerning confidential communications is a privilege to be exercised by the patient himself. *State Farm Mutual Auto Ins. Co. v. Kramer* (1938), 105 Ind.App. 591, 14 N.E.2d 741. The physician-patient privilege is not to be construed so as to permit a party charged with a crime to invoke it as a weapon of defense in his own favor. *Hauk v. State* (1897), 148 Ind. 238, 46 N.E. 127. It is intended to protect the patient, and not to shield one who is charged with perpetrating an unlawful act upon the patient. *Id.*

1. The State had to prove that Mark was a dependent within the meaning of IND.CODE 35-46-1-4. IND.CODE 35-46-1-1 defines dependent: (1) an unemancipated person who is under eighteen (18) years of age, or (2) a person of any age who is mentally or physically disabled. The record established that Mark was about 40 at the time of the offense. Record at 460.

 At the hearing on Gladys' objection, Dr. Kissell testified that during the summer of 1985, in conjunction with his treatment of Mark, he advised Gladys regarding the appropriate care for her son, who had been placed in her care during his convalescent leave. His efforts were also directed toward making Gladys "... understand and ... recognize that her son had problems ..." R. 289. Relying on this testimony, Gladys contends that she was a patient of Dr. Kissell, and that she may assert a privilege. We disagree. The physician-patient privilege applies only to those communications necessary to treatment or to diagnosis looking toward treatment. *Corder v. State* (1984), Ind., 467 N.E.2d 409. The record substantiates the State's argument that Dr. Kissell was not treating Gladys. While Gladys may have derived some benefit from consultations with Dr. Kissell, the advice and information she received were for the benefit of her son. Gladys could not assert a physician-patient privilege; therefore, the court did not err in admitting Dr. Kissell's testimony.

## ISSUE II.

 State's witness Sharon Groeger testified regarding her investigation of the events of September 20, 1984. She was a deputy prosecuting attorney in Monroe County at that time. Answering defense counsel's preliminary questions, Groeger testified that she had made handwritten notes of her recollections of September 20, and that the notes had been given to the State the previous day. However, the defense had not been given a copy of the statement. Defense objected to Groeger's testimony. The defense was allowed to review the notes during a recess, but declined to request a continuance. It was established that there was no information in the statement which was not available to the defense prior to trial.[2] Under these circumstances, the trial court did not abuse

its discretion in allowing Groeger to testify. *Harris, supra.*

## ISSUE III.

Gladys' third assignment of error is that there was insufficient evidence to sustain the conviction. Specifically, she contends that the State had not shown that Gladys had "placed" Mark in the home, restrained him in any way, or shown how long Mark had been in those conditions.

Our well-established standard of review is set out in *Alfaro v. State* (1985), Ind., 478 N.E.2d 670, 672:

[O]n appeal the reviewing court does not weigh the evidence or judge credibility. We are constrained to consider only that evidence most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. (Citations omitted).

Gladys was charged under I.C. 35–46–1–4:

"(A) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:

(1) places the dependent in a situation that may endanger his life or health

...

\* \* \* \* \* \*

commits neglect of a dependent, a class D felony ..."

 The evidence favorable to the verdict shows that Mark is Gladys' son, and that she owned and resided at the house at 404 S. Washington Street. It was established by expert opinion testimony that Mark was mentally disabled on September 20, 1984, and was unable to care for himself. There was also testimony describing the conditions in the house, as set out above, and that those conditions constitut-

2. Defense counsel noted two items of information not previously known to him. One was that Officer Haverstock had been at the scene; the other was that Groeger had heard Gladys giving her son a shower when police returned with the search warrant. However, it further developed at the hearing on Gladys' objection that Haverstock's name had been given to defense counsel as a possible witness prior to trial, and that Groeger's name had been on the State's witness list, but that defense counsel had not deposed her. R. 390–391.

ed a health hazard. Finally there was testimony from Gladys that she had assumed Mark's care:

Q. Did you, did anyone else over the years until the police came to your house on September 20th, did anyone else take care of Lee [Mark] or did he live with anyone else other . . .

A. No.

Q. Were you living at 404 South Washington on September 20th?

A. I was.

R. 446

Q. Have you ever in Lee's life Gladys, failed to provide him with food?

A. Never, never . . .

Q. Did you ever fail to provide him with clothing?

A. I did not . . .

Q. Did you ever fail to provide him with proper nutrition or medical care?

A. No. I always told him if he felt bad or he needed to, just let me know, we would see a doctor.

R. 447–448.

We believe there was sufficient evidence in the record, as exemplified in the foregoing passages, from which the jury could have found that Gladys had placed Mark, her dependent son, in a situation that may have endangered his health. We do not find it significant that there was little evidence that Mark was restrained or confined, since under the statute confinement is not a necessary element. Moreover, the offense does not require that the State show that the victim was subject to the health-threatening conditions for a certain length of time. There was sufficient evidence, including expert testimony, to show that Mark's health had been endangered when he was found on September 20, 1984.

ISSUE IV.

■ Pursuant to her motion to suppress, Gladys sought to have excluded any testimony describing what the police witnesses observed inside the residence after entering without a search warrant. A warrantless search can only be justified by probable cause and one of the recognized exceptions to the warrant requirement, and the State carries the burden of proving that warrantless action fell within one of those exceptions. *Rihl v. State* (1980), Ind.App., 413 N.E.2d 1046. Gladys contends that the State did not satisfy its burden of proof on the issue of probable cause and it did not show that any exigent circumstances existed.

■ However, Gladys has not included in the record any transcription of the hearing on the motion to suppress. A criminal defendant has a duty to provide any transcript supporting his contention. *Cox v. State* (1985), Ind., 475 N.E.2d 664; *Harris v. State* (1985), Ind., 480 N.E.2d 932. Because the gravamen of Gladys' contention is that the State did not prove the police had probable cause to enter the house and that exigent circumstances existed, it would be necessary for this court to view the evidence the State presented at the suppression hearing in order to intelligently review this issue. Failure to include the appropriate transcript is grounds for waiver of the error. *Harris, id.; Smith v. State* (1981), Ind., 422 N.E.2d 1179. Although some testimony regarding the propriety of the search was elicited at trial on cross-examination of Officer Neely we do not believe that intelligent review of this delicate factual issue can be made merely on the evidence elicited at trial. The issue is waived.

Judgment affirmed.

NEAL, J., concurs.

STATON, J., dissents with separate opinion.

STATON, Judge, dissenting.

I dissent from the Majority opinion, because it does not follow the Rules of Appellate Procedure when dealing with the issue of probable cause which is the last and final issue discussed in the opinion. The Majority has not followed AP 7.2(C)(2) which provides that "Incompleteness or inadequacy of the record shall not constitute a ground for dismissal of the appeal or preclude review on the merits." Yet, the

issue of probable cause raised by Gladys Lomax was dismissed as waived because of an inadequate record. The transcript of the hearing on the motion to suppress was not included in the transcript submitted to this Court. The trial court, the litigants, and this Court are all bound to follow the letter and spirit of the Rules of Appellate Procedure as set forth by the Indiana Supreme Court. I cannot concur in an opinion where the Rules have been ignored and the merits of an issue left in doubt.