Gloria SHIPLEY, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 45A03–9202–CR–40.

Court of Appeals of Indiana,
Third District.

Aug. 31, 1993.

Rehearing Denied Oct. 29, 1993.

Nick J. Thiros, Cohen and Thiros, P.C.,
Merrillville, Frederick Vaiana, Ober,

Symmes, Cardwell, Voyles & Zahn, Indianapolis, for appellant-defendant.

Pamela Carter, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

HOFFMAN, Judge.

Appellant-defendant Gloria Shipley[1] appeals her conviction for murder and neglect of a dependant, a Class B felony.

The facts relevant to this appeal disclose that on November 8, 1990, just before 11:00 A.M., Emergency Medical Technicians (EMTs) and paramedics were summoned to the Shipleys' home in Crown Point, Indiana. When the medical personnel reached the scene, they found five-year-old Amy Shipley, the victim, in full cardiac arrest. The victim was not breathing nor was her heart beating. Additionally, her eyes were fixed and dilated indicating brain death and the portion of her eyes that was exposed had dried out. These factors indicated that the victim had been dead for some time. Upon the EMTs' arrival at the scene, Gloria Shipley, a nurse, told EMT Gary Vaughn that she had been doing CPR on the victim, her stepdaughter; however, the victim was not in the proper position to do so and the vomitus in her mouth would have made it impossible. Immediate resuscitation efforts were begun, and the victim was transported to the hospital where she died.

Many of the medical personnel who treated the victim and those who examined her body after her death noted that it was covered with bruises at various stages of healing. They also indicated that the victim was emaciated, indicating malnutrition, and that she was dehydrated. There was no indication that Gloria Shipley or Gary Shipley, a doctor, sought medical attention for the victim. Two autopsies were performed on the body. The results of both were that the victim died of the combination of blunt force trauma, evidenced by the extensive bruising; significant dehydration; and malnutrition. The actual mechanism of death was aspiration.

In the past, both the Shipleys had spanked the victim with their hands, a hair brush, and a belt. The victim had also been forced to swallow dishwashing soap; drink Ensure, a liquid dietary supplement, laced with pepper; and eat cereal laced with pepper. The Shipleys explained that the pepper was a punishment for inappropriate eating. One of the autopsies of the victim revealed vegetable cells in her lungs, consistent with the fact that the victim had been fed pepper. The victim was also often locked in a bathroom as a punishment for what the Shipleys contended were inappropriate eating behavior and lapses in toilet training.

On November 9, 1990, the State charged Gloria Shipley with murder, a felony, and neglect of a dependant, a Class B felony. Subsequently, a jury found Gloria Shipley guilty of both murder and neglect of a dependant. She was sentenced to fifty years on the first count and fifteen years on the second count, the sentences of imprisonment to run consecutively. Gloria Shipley now appeals.

Gloria Shipley raises six issues for review. As restated, the issues are:

(1) whether the trial court erred in failing to grant Shipley's motion for a mistrial or in the alternative to conduct a *Lindsey* voir dire when the jury was briefly exposed to suppressed evidence during its deliberation process;

(2) whether the trial court erred in not further inquiring into an allegation of a coerced verdict;

(3) whether there was a break in the chain-of-custody of the blood samples of the victim, Amy Shipley;

(4) whether there was sufficient evidence to sustain Gloria Shipley's murder conviction;

(5) whether there was a double jeopardy violation when the trial court imposed consecutive sentences for murder and neglect of a dependant; and

1. Appellant-codefendant Gary Dean Shipley died in June of 1992. Hence, any appeal instituted on his behalf is now moot.

(6) whether the trial court committed reversible error in allowing the State to question the Shipleys concerning Gloria Shipley's sexual preference and Gary Shipley's medical license restriction.

Gloria Shipley contends that the trial court erred in denying her motion for mistrial after suppressed information entered the jury room. During the jury deliberation process, the trial court discovered that a partially unredacted portion of codefendant Gary Shipley's voluntary statement to the police had been inadvertently taken into the jury room along with various other exhibits and photographs. Upon making the discovery, the trial court judge ordered the bailiff to retrieve all the exhibits and documents, except for the photographs, from the jury room. At the time the oversight was discovered, the jury had been deliberating for less than one-half hour. The two offending questions were:

"Q. Did you [Gary Shipley] ever cause any sexual harm to Amy?

A. No.

Q. Have you abused any type of drugs within the last couple of years?

A. No, I haven't."

The page of the exhibit containing the questions was removed, corrected, and replaced. Gary Shipley moved for a mistrial in which Gloria joined, based on the inadvertent admission of the offending questions. The trial court denied the joint motion.

■ A trial court has discretion in determining whether to grant a mistrial, and its decision is afforded great deference on appeal. *Gregory v. State* (1989), Ind., 540 N.E.2d 585, 589. Mistrial is an extreme remedy warranted only when a defendant is placed in a position of grave peril to which the person should not have been subjected. *Kelly v. State* (1990), Ind., 561 N.E.2d 771, 772. The gravity of the peril is determined by considering the probable persuasive effect of the incident on the jury's decision, not the degree of impropriety. *Gregory*, 540 N.E.2d at 589.

■ Here, the unredacted exhibit which was inadvertently allowed to enter the jury room was not prejudicial to Gloria Shipley and did not place her in grave peril. The improper portions of the exhibit made no reference to Gloria; rather, the questions concerned only the codefendant Gary Shipley. Moreover, the evidence was in fact exculpatory and not incriminating, as Gary Shipley answered both questions in the negative. Gloria has failed to demonstrate how she has been prejudiced. Thus, the trial court did not abuse its discretion in denying Gloria's motion for mistrial.

■ Gloria Shipley further argues that the trial court should have followed the procedures erected in *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819, and voir dired the jurors to determine what effect, if any, the inadmissible evidence had on the jury deliberations. In *Lindsey*, the defendant was charged with burglary. During the trial, a local newspaper published articles which contained discussions of the defendant's trial and his past encounters with the law which were not accurate. The articles also stated that the victim had been raped and that the defendant had been involved in a similar situation on a previous occasion. *Id.* at 354–356, 295 N.E.2d at 821–822. Our supreme court determined that the trial court should have interrogated the jury to determine its exposure to the prejudicial material, and those jurors acknowledging exposure should then be examined individually to determine the extent of the exposure and the likelihood of prejudice. *Id.* at 358–59, 295 N.E.2d at 824. The court stated in *Lindsey*: "[a] denial of a motion to interrogate the jury will be reversible error only if there has been substantial peril." *Id.* at 358, 295 N.E.2d at 824. The court further stated clearly the trial court is required to interrogate the jury only "[i]f the risk of prejudice appears substantial, as opposed to imaginary or remote only...." *Id.* at 359, 295 N.E.2d at 824. As previously determined, Gloria Shipley has failed to demonstrate that she has been placed in substantial peril. The inadmissible evidence which inadvertently entered the jury room briefly

during deliberations had no relationship to Gloria Shipley's case.

■ Gloria Shipley also contends that the trial court failed to determine if the jury's verdict was unanimous. Immediately prior to the return of the verdict, the trial court informed the parties that the jury had reached verdicts but that there may be a problem in that the verdicts might not be unanimous. The trial court further explained:

"BY THE COURT: 'Miss Seyser is the foreman. She indicates that Mrs. Wertz said that you forced me. It's my verdict, but you forced me into it.'"

The trial court then decided it would *sua sponte* poll the jury. After the jury announced its verdicts finding both Gary and Gloria Shipley guilty of murder and neglect of a dependant, the trial court polled the jurors as to the verdicts, each juror answered in the affirmative, and the verdicts were found to be unanimous.

■ Gloria now contends that the trial court should have conducted a *Lindsey* voir dire of the jury, or at the very least of Miss Seyser and Mrs. Wertz, to ensure that the verdicts were not coerced. Gloria's failure to complain of the alleged error at trial in a timely fashion results in waiver of this issue.

See *Reynolds v. State* (1984), Ind., 460 N.E.2d 506, 508–509 (issue of whether trial court improperly communicated with juror waived by failure to make timely in court objection);

see also *Helton v. State* (1989), Ind., 539 N.E.2d 956, 957 (defendant waived objection to any error resulting from admission of evidence by failing to object at trial).

Moreover, the trial court's action of polling the jury was sufficient to establish that the verdicts were unanimous and that no one had been coerced or induced to agree to a verdict with which the juror did not fully assent. All the jurors answered in the affirmative when the trial court polled the jury, demonstrating that the jury's verdicts were unanimous.

■ Gloria next argues that the trial court erred in admitting the toxicology reports of the victim's blood samples into evidence because the State did not establish a sufficient chain-of-custody for the samples. The chain-of-custody doctrine requires an adequate foundation to be laid showing the continuous whereabouts of physical evidence before it may be admitted into evidence. *Hughett v. State* (1990), Ind., 557 N.E.2d 1015, 1019. When dealing with fungible items, such as blood, the State has an enhanced burden of demonstrating a sufficient chain-of-custody. *Id.* The State, however, need only provide evidence that strongly suggests the exact whereabouts of the evidence at all times. *Pasco v. State* (1990), Ind., 563 N.E.2d 587, 594. The State need not provide evidence that excludes all possibilities of tampering but instead must provide reasonable assurances that the evidence passed through various hands in an undisturbed condition. *Id.*

■ Gloria urges that there were three separate breaks in the chain-of-custody. First, she contends that three tubes of blood were sealed in the evidence bag and that the the crime lab apparently broke the seal to remove one of the tubes of blood. Gloria is mistaken. At trial, Charlene Bulot, a Lake County coroner's office pathologist assistant, stated that she was present when the first autopsy was performed. Bulot watched the pathologist, Dr. Kim, draw a syringe of the victim's blood. Dr. Kim then handed the syringe to Bulot who injected the blood into test tubes, which she labeled and dated. Subsequently, Bulot placed only two of the tubes of blood into a bag with one tube of the victim's bile. Bulot sealed the bag and placed it in a locked refrigerator. Lake County Sheriff's Deputy Catherine Balon picked up the sealed bag from the refrigerator. Balon and William Huber, Lake County coroner office chief investigator, then delivered the bag containing the two tubes of blood and one tube of bile to Jeff Retz of the Indiana Department of Toxicology in Indianapolis. The blood was tested and the results of the

tests showed metabolites of the prescription drug Darvon.

Secondly, Gloria contends that there was confusion as to the date the blood samples were delivered to Indianapolis. Huber testified that he delivered the blood to Retz in Indianapolis on November 19, 1990. Likewise, Retz testified that he personally received the sealed bag containing the samples on November 19, 1990. Retz explained that with regard to the blood samples the November 12 and 13 dates reflected on exhibit J, a copy of the toxicology department's lab report, were an error. Further, he explained that any confusion was a result of multiple submissions on different days of various samples involved with the investigation.

Finally, Gloria asserts that the appearance of an unaccounted for tube of blood which accompanied the victim's body to the second autopsy, renders the other blood samples suspect. As the State points out, the blood sample that accompanied the victim's body was never introduced into evidence. Thus, its existence has no relevance to the admission of the lab results involving the blood samples for which a proper chain-of-custody was established. The trial court correctly determined that the State provided a sufficient chain-of-custody.

Gloria also contends that evidence was insufficient to sustain her conviction of murder. More specifically, she asserts that the State failed to establish her specific intent to commit murder.

■■■ When reviewing the sufficiency of the evidence, this Court will neither reweigh the evidence nor determine the credibility of witnesses. If, upon review we find there to have been substantial evidence of probative value to establish every material element of an offense beyond a reasonable doubt, we will not disturb the trial court's verdict. *Clemens v. State* (1993), Ind., 610 N.E.2d 236, 243. We consider only the evidence most favorable to the State, along with all reasonable inferences to derived therefrom. *Id.* The State may demonstrate a defendant's knowledge

by the introduction of circumstantial evidence.
*See id.;*
see also *Hill v. State* (1989), Ind.App., 535 N.E.2d 153, 154 (knowing neglect of a child).

It is well settled that one is presumed to have intended the reasonable results of his own acts. *Johansen v. State* (1986), Ind., 499 N.E.2d 1128, 1132. Further, the duration, brutality, and relative strength of the defendant and the victim are factors that can be considered by the jury as evidence of the defendant's intent to kill. *Id.*

■■■ In this case, testimony of the two pathologist who performed autopsies on the body indicated that the victim had died of the combination of blunt force trauma, significant dehydration and malnutrition. The five-year-old victim had extensive bruising on her body including her head. The bruises were of various ages. Dr. Clark testified that the bruising was not consistent with the Shipleys' claim that the victim had fallen down a flight of stairs. Various medical personnel testified that the victim was emaciated. The victim also had several indications of dehydration, including the loss of elasticity of her skin, sunken eyes, and dried lips.

Danielle Shipley, the victim's older sister, had previously been placed in protective custody for a period of time, stemming from Danielle's allegations of abuse by Gloria and Gary Shipley. Danielle testified that both Gloria and Gary Shipley often spanked the victim, Amy, locked her in the bathroom for extended periods of time, and required her to drink a liquid dietary supplement laced with pepper. James Forbes, the supervisor of the Indiana State Police Drug Analysis Department, tested the victim's blanket upon which she had vomited and the victim's fecal matter from the bathtub. Both tested positive for pepper. Dr. Stephen Cole testified as to the long term effect of pepper ingestion as a form of child abuse. He stated that it would cause the victim to become malnourished and dehydrated, due to diarrhea and vomiting caused by the irritation of the child's digestive tract. Dr. Cole noted that a person

suffering from malnutrition and dehydration would be even more susceptible to these effects and to asphyxiation by pepper induced into the air passages. Finally, Dr. Cole noted that the autopsy results were consistent with excessive pepper ingestion.

Prior to her death, the victim suffered from diarrhea, vomiting, and had bruises covering her body. Gloria Shipley is a nurse, although her training cannot be used to hold her to a higher standard of conduct, from this fact combined with the other evidence introduced at trial, it was well within the province of the jury to draw an inference that Gloria Shipley "knowingly or intentionally" killed the victim. The jury's verdict is clearly supported by sufficient evidence.

Gloria next argues that her sentences for both murder and neglect of a dependant violated double jeopardy. More specifically, she contends that the same acts which support the neglect of a dependant charge also formed the bases for the murder charge. The State counters that there was no violation of double jeopardy because different elements underlie the two offenses.

 Two offenses are the same for the purpose of double jeopardy when the same act constitutes a violation of two distinct statutory provisions which do not require proof of an additional fact.

> *Wethington v. State* (1990), Ind., 560 N.E.2d 496, 506; *Hall v. State* (1986), Ind., 493 N.E.2d 433, 435.

In Indiana, however, double jeopardy analysis does not end with an examination of the statutory provisions. The factual bases alleged by the State in the information must also be examined.[2] *Hall*, 493 N.E.2d at 435.

 On November 9, 1990, the State charged the Shipleys as follows:

"COUNT I

*MURDER*

THOMAS DECANTER, upon oath says that BETWEEN SEPTEMBER 15, 1990, AND NOVEMBER 8, 1990, in the County of Lake, State of Indiana, GARY DEAN SHIPLEY and GLORIA ANNE SHIPLEY, did knowingly or intentionally kill AMY RENEE SHIPLEY, contrary to I.C. 35–42–2–1 [sic] and against the peace and dignity of the State of Indiana.

*COUNT II*

*NEGLECT OF A DEPENDANT (B)*

THOMAS DECANTER, upon oath says that BETWEEN SEPTEMBER 15, 1990, AND NOVEMBER 8, 1990, in the County of Lake, State of Indiana, GARY DEAN SHIPLEY and GLORIA ANNE SHIPLEY, having the care of a dependant, AMY RENEE SHIPLEY placed AMY RENEE SHIPLEY in a situation which may have endangered her life or health which resulted in serious bodily injury to AMY RENEE SHIPLEY, contrary to I.C. 35–46–1–4 and against the peace and dignity of the State of Indiana."

Gloria Shipley was convicted and sentenced on both counts. Here, like in *Hall v. State* (1986), Ind., 493 N.E.2d 433, both charges are based on the same acts occurring over the same time period. *Id.* at 435–436. Under the facts of this case, Gloria Shipley's convictions for both offenses cannot stand because one offense was the instrument by which the other was committed.

At trial, the evidence showed that the acts which caused the victim's death were the combination of malnutrition, dehydration, and blunt force trauma over a period of time; these acts cannot be used as the factual basis for both the neglect of a dependant charge and the murder charge,

---

**2.** Despite the recent United States Supreme Court's decision in *United States v. Alvin J. Dixon and Michael Foster*, —— U.S. ——, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), this Court is bound by our own supreme court's interpretation of the Double Jeopardy Clause contained in the Indiana Constitution. Our supreme court requires that in addition to a *Blockburger* [*v. United States* (1932), 284 U.S. 299, 52 S.Ct. 180,

76 L.Ed. 306], analysis we must also look to the manner in which the offenses are charged and not merely the statutory definitions of the offenses. *See Tawney v. State* (1982), Ind., 439 N.E.2d 582, 588. Moreover, when the same act constitutes two separate crimes, the very essence of double jeopardy principles prevents two separate convictions.

to do so would be to punish Gloria Shipley twice for the same acts.

> See *Strong v. State* (1989) Ind., 538 N.E.2d 924, 929 (sentence and conviction for neglect of a dependant causing serious bodily injury vacated in view of conviction for murder where both offenses arose from the same acts);
>
> *Hall*, 493 N.E.2d at 435–436 (when neglect charge and reckless homicide charge were both based upon parents' failure to provide medical treatment to their son during his five-day illness, double jeopardy prevents parents' convictions for both offenses);
>
> *Smith v. State* (1980), Ind.App., 408 N.E.2d 614, 622 (improper to impose sentence for both neglect of a dependant and involuntary manslaughter).

The present case is distinguishable from those cases in which there is probative evidence to show a continual pattern of acts constituting neglect independent from the acts causing the death of the dependant.

> See e.g., *Bean v. State* (1984), Ind., 460 N.E.2d 936, 942–943;
>
> *Gasaway v. State* (1989), Ind.App., 547 N.E.2d 898, 903–904, *trans. denied;*
>
> *Hughes v. State* (1987), Ind.App., 508 N.E.2d 1289, 1300–1301 *trans. denied.*

Here, the evidence showed that the acts of neglect resulted in the victim's death. In essence, the pattern of neglect was the means by which the murder was committed. Thus, double jeopardy precludes Shipley's conviction and sentence for both offenses.

▬ The State asserts that the wounds to the tops of the victim's feet were separate and distinct from those that caused her death; hence, those injuries can be used to support Gloria Shipley's conviction for neglect of a dependant causing serious bodily injury. Contrary to the State's assertion, the evidence was insufficient to show that the small wounds on the victim's feet constituted neglect of a dependant.

Staff nurse Karen Bertram was on duty the day the victim was brought to the hospital's emergency room. After resuscitation efforts failed, Bertram made an assessment of the condition of the victim's body. In addition to noting bruises, she also noted that there was at least one open area on each foot two to four millimeters in size. Another nurse stated that the area "looked almost like necrotic area, the tissue was dying or dead." Forensic pathologist Dr. Michael Clark stated that the left foot had a crator-like lesion with crust on it. Dr. Kim described the area as a "black spot" and later referred to the area as a burn mark on the left foot.

There was no evidence presented, however, as to how or when the wounds occurred or who inflicted them. Also, there was no evidence from which a fact-finder could infer that the small wounds to the top of the victim's feet in any way endangered her life or health. In fact, the sentencing phase of Gloria Shipley's trial was the first time that it was ever suggested that the neglect of a dependant, as a Class B felony charge, should be based on the wounds on the victim's feet. The evidence presented at trial was insufficient as a matter of law to sustain Gloria Shipley's conviction for neglect of a dependant. Hence, her conviction on this count must be reversed.

Finally, Gloria argues that the trial court erred in allowing the State to question the witnesses concerning her sexual preference and the status of Gary Shipley's medical license. During cross-examination of the codefendant, the trial court allowed the State to ask him if there was a sexual relationship between Gloria Shipley and his first wife at the time of his and his first wife's separation. The codefendant stated that for a period of time that he, his first wife, and Gloria lived under the same roof. Over a continuing objection, the codefendant testified that he believed that his first wife and Gloria were "just good friends." The codefendant further testified that his first wife was infatuated with Gloria. During cross-examination of Gloria Shipley, she denied being sexually involved with the codefendant's first wife.

▬ A trial court has broad discretion in ruling on relevance of the evidence. *Lomax v. State* (1987), Ind.App., 510 N.E.2d

215, 218. Evidence is relevant if it tends to prove or disprove a material fact or sheds any light on the guilt or innocence of the accused. *Davidson v. State* (1990), Ind., 558 N.E.2d 1077, 1088. Relevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *Lomax,* 510 N.E.2d at 218. A trial court is given wide latitude in weighing the probative value of the evidence against the possible prejudice of its admission, and its ruling will be reviewed only for an abuse of discretion. *Id.*

▇▇ Here, the trial court allowed the testimony on the theory that any possible sexual relationship was relevant to the effect it may have had on the children's behavior. The trial court did not abuse its discretion in allowing the testimony on this basis. Further, the trial court reduced the prejudicial effect of the testimony by prohibiting the admission of a letter and notes regarding the codefendant's first wife's feeling about Gloria.

▇▇ During cross-examination of the codefendant, the State asked him if his medical license was under restriction. The State argued that this information was relevant, as the restriction gave him a motive for failing to seek medical treatment for his daughter, and thereby risking having the remainder of his license suspended or revoked because of allegations of child abuse. The trial court allowed the testimony and the codefendant denied the motive. The trial court did not err in admitting the evidence. Any evidence as to the motive of an accused clearly has a high probative value. *See Davidson,* 558 N.E.2d at 1088. The trial court prevented the State from revealing that the restriction involved prescribing drugs to family members, thus removed much of the prejudicial value. Moreover, the evidence made no reference to Gloria Shipley. The trial court did not err in allowing into evidence the testimony as to the codefendant's restricted medical license.

Affirmed in part, reversed in part and remanded with instruction for the trial court to vacate Gloria Shipley's conviction for neglect of a dependant, as a Class B felony.

SULLIVAN, J., concurs with opinion.

STATON, J., dissents in part and concurs in part with opinion.

SULLIVAN, Judge, concurring.

I disagree with the majority's treatment of the admission of testimony of Gloria Shipley's "possible" (Majority Opinion at 719) sexual relationship with Gary Shipley's first wife. A mere possibility that a sexual relationship existed is inadequate basis for admission of the evidence. At best, such evidence could amount only to sheer speculation or innuendo. Furthermore, to admit such evidence as relevant to the effect *"it may have had"* (Majority Opinion at 719 [emphasis supplied]) upon the children's behavior is to double the speculative nature of the testimony. Despite the obvious prejudicial import of such evidence, I nevertheless deem its admission harmless beyond a reasonable doubt in light of the overwhelming evidence of guilt.

In all other respects I concur in the majority opinion.

STATON, Judge, dissenting in part and concurring in part.

I dissent in part and concur in part. I dissent as to Issue V dealing with double jeopardy. The majority erroneously applies a same-conduct test to prohibit sentencing Shipley for murder and neglect of a dependant. While Indiana adopted a same-conduct test in *Tawney v. State* (1982), Ind., 439 N.E.2d 582, 588, *reh. denied,* and the United States Supreme Court adopted a same-conduct test in *Grady v. Corbin* (1990), 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548, the United States Supreme Court has since overruled *Grady. See United States v. Alvin J. Dixon and Michael Foster,* —— U.S. ——, ——, 113 S.Ct. 2849, 2864, 125 L.Ed.2d 556 (1993). In *Dixon, supra,* the Court determined the same-conduct test was unstable in its application and the same-elements test established in *Blockburger v. United States,* 284

U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932) should be the controlling test for double jeopardy analysis. *Dixon,* —— U.S. at ——, 113 S.Ct. at 2863.

Applying the *Blockburger* analysis to the present case, the crimes of murder and neglect of a dependent have different statutory elements. Specifically, IND.CODE 35–36–1–4 (1988) provides in relevant part:

> A person having the care of a dependent ... who knowingly or intentionally ... places the dependent in a situation that may endanger his life or health ... commits neglect of a dependent....

IND.CODE 35–42–1–1 (Supp.1992) provides in relevant part:

> A person who ... knowingly or intentionally kills another human being ... commits murder, a felony.

The majority's opinion allows Shipley to commit these two separate and distinct offenses and only be punished for one offense. This is the type of instability in the same-conduct test which induced the United States Supreme Court to overrule *Grady, supra. See Dixon, supra.*

In the present case, the jury heard testimony that Amy's body was covered with bruises at various stages of healing; that Amy was forced to swallow dishwashing soap; and that Amy was forced to consume liquids and foods which were laced with pepper. Additionally, the jury heard Dr. Stephen Cole testify that the long term ingestion of pepper was a form of child abuse. The information in the present case covered a fifty-four day period. Even if the acts of neglect may overlap with some of the acts contained in the murder charge, there is no double jeopardy under *Flowers v. State* (1985), Ind., 481 N.E.2d 100, 105–06, *aff'd* (1988), Ind., 518 N.E.2d 1096.

The same-conduct test allows a person to commit two separate crimes with different elements and escape the consequences of a portion of her actions. The instability of the same-conduct test is reflected in the result the majority adopts in the present case. Because of the inherent instability in the application of the same-conduct test, I conclude we should follow the lead of the United States Supreme Court in discarding the same-conduct test and limit our double jeopardy analysis to that set forth in *Blockburger. See Dixon, supra.*