Anthony M. TAYLOR, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9407–CR–407.

Court of Appeals of Indiana, Second District.

Dec. 22, 1994.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Jodi Kathryn Rowe, Deputy Atty. Gen., Indianapolis, for appellee.

FRIEDLANDER, Judge.

Anthony M. Taylor appeals his conviction of two counts of Neglect of a Dependent,[1] one a class B felony and one a class D felony. Taylor presents the following restated issues for review:

I. Was the evidence sufficient to support the convictions?

II. Did Taylor's conviction of two counts of neglect of a dependent violate constitutional double jeopardy principles?

We affirm.

The facts favorable to the judgment are that on July 23, 1993 Taylor was at the home of Catrice Myles. Myles asked Taylor to babysit for Arrin Myles, the four-month-old son of Taylor and Myles, while Myles ran errands. Myles left at approximately 10:30 a.m. At approximately 1:15 p.m., Myles called home and was informed by Taylor that while Taylor was giving Arrin a bath, Arrin had fallen into a stream of hot water running from the tap and his face was burned. Myles was not concerned because Taylor indicated that the injuries were not serious and that Arrin was "just fine." *Record* at 70. Myles

1. Ind.Code 35–46–1–4.

returned home a short while later and discovered Arrin moaning. Skin on Arrin's cheek was missing, his face was severely blistered and was so swollen that Arrin could not open his eyes. Arrin was taken by ambulance to Wishard Hospital, where he was examined by Dr. Michael Wilcox and Dr. Raghuram Elluru, who both determined that Arrin had suffered second-degree burns to his entire face and that the injuries were life-threatening without medical treatment. Taylor was convicted following a bench trial.

I.

Taylor contends that the evidence was insufficient to support his convictions. In reviewing the sufficiency of evidence, we apply our well-known standard of review: we neither reweigh evidence nor judge witness credibility, but examine only the evidence and reasonable inferences favorable to the judgment. *Jenkins v. State* (1993), Ind., 627 N.E.2d 789, *cert. denied*, (1994), —— U.S. ——, 115 S.Ct. 64, 130 L.Ed.2d 21.

Taylor was convicted of neglect as a B felony because Arrin suffered serious injuries. Taylor's challenge with regard to the B felony conviction focuses upon the adequacy of the evidence regarding whether Arrin's injuries resulted from intentional conduct on Taylor's part. Dr. Elluru was in the first year of his fellowship, training in the medical specialty of plastic surgery. At the time Arrin was initially examined at Wishard, Dr. Elluru's duties included treating burn patients at Wishard. Dr. Elluru was summoned to assess Arrin's condition.

Dr. Elluru testified that Arrin had suffered second degree burns over his entire face and chin. Dr. Elluru described the burns as follows.

"The burns were very uniform in appearance in terms of the depth of the burn. The entire face was a uniform depth of burn and the burn itself was very symmetrical. I mean, the edges of the burn were very confluent. There were no burns elsewhere on the body; All of this is very suggestive of an immersion[-]type injury." *Record* at 119.

Dr. Elluru testified that most people set their water heater temperature at between 120 and 140 degrees. He further testified that with 140-degree water, injuries like Arrin's would result only if the skin had been in constant contact with the water for 10–15 seconds. Dr. Elluru testified that Arrin's injuries were not consistent with splash burns, as contended by Taylor, because of the uniform depth of the burns, that only Arrin's face was burned and the edges of the burned area were confluent, and the time of exposure to hot tap water necessary to sustain second-degree burns. In short, there was credible evidence, comprised of the burns themselves and expert medical testimony regarding their nature and cause, supporting the judgment that Taylor intentionally immersed Arrin's face in scalding water, resulting in burns. Such evidence, although circumstantial in nature, is sufficient to support the judgment. *See Sipress v. State* (1990), Ind.App., 562 N.E.2d 758.

Taylor argues, however, that such evidence was insufficient in view of the countervailing evidence that Arrin's injuries were the result of an accident. In support of his contention, Taylor offers only his own testimony that Arrin slipped into a stream of running hot tap water. The trial court evidently concluded that Taylor's explanation of the occurrence was not credible. Such was within the trial court's province and we will not disturb its determination in this regard. *Jenkins, supra.*

Taylor was convicted of D felony neglect because he did not obtain medical treatment for Arrin after Arrin had suffered serious injuries. Taylor contends he did not know that Arrin's injuries were serious enough to warrant medical treatment. There is credible evidence indicating otherwise.

Taylor testified that Arrin sustained his injuries at about 12:30 p.m. When Myles called approximately 45 minutes later to inform Taylor she would be late, Taylor told her that Arrin had received minor burns from exposure to hot tap water, but that he was "just fine." Yet, Dr. Elluru testified that Arrin's burns were so severe that blistering would have occurred "within minutes of the injury ... [c]ertainly within a half an

hour...." *Record* at 130. In other words, the blistering would have been obvious at the time Myles called. When Myles arrived home at approximately 2:00, Arrin's injuries were so apparent and so alarmed Myles that she "just fell and ... got up and grabbed him and ran to the living room to call 911, but [she] was so nervous [she] just dropped the phone," and then "went out in the hall screaming for help". *Record* at 72.

Once again, it was the trial court's prerogative to weigh the conflicting evidence on the question of Taylor's awareness that Arrin's condition required medical attention without which his health was in danger. We decline Taylor's invitation to engage in the forbidden reweighing of evidence and assessment of witness credibility. *Jenkins, supra.* The evidence was sufficient to permit the trial court to infer that Taylor was aware of a high probability that by failing to obtain prompt medical treatment for Arrin, Taylor was endangering Arrin's life and health. *See Sample v. State* (1992), Ind.App., 601 N.E.2d 457.

## II.

Taylor contends that his conviction of two counts of neglect of a dependent violated constitutional double jeopardy prohibitions. In support of his argument, Taylor cites *Shipley v. State* (1993), Ind.App., 620 N.E.2d 710. In *Shipley*, the child victim died as a result of a combination of blunt force trauma, significant dehydration, and malnutrition. The evidence indicated that the child's death resulted from abuse and neglect on the part of the child's parents. The defendant, the victim's mother, was convicted of neglect of a dependent and murder.

Our Third District applied the same-conduct test set out in *Wethington v. State* (1990), Ind., 560 N.E.2d 496 in determining whether the two convictions violated constitutional double jeopardy principles. The same-conduct test was explained in *Shipley:* "Two offenses are the same for the purpose of double jeopardy when the same act constitutes a violation of two distinct statutory provisions which do not require proof of an additional fact." 620 N.E.2d at 717. *Id.* at 718. The court determined that the same act provided the basis for both the murder and

the neglect charges. Applying the *Shipley* test, our Third District reversed the neglect conviction because "the pattern of neglect was the means by which the murder was committed." *Id.* at 718; *see also Hall v. State* (1986), Ind., 493 N.E.2d 433. *Shipley* differs from the instant case, however, in one important respect: the two neglect charges of which Taylor was convicted were not premised upon the same act.

 *Shipley* involved the question of whether one act may serve as the predicate for convictions under two separate statutes. In the instant case, on the other hand, Taylor received two convictions under the same statute. Such is constitutionally sound only if the convictions are premised upon separate acts. Taylor was convicted of Count II for having held Arrin's face in scalding hot water. Such constitutes a violation of I.C. 35–46–1–4(a)(1), which defines neglect of a dependent as knowingly or intentionally "plac[ing] the dependent in a situation that may endanger his life or health." *See Sipress, supra.* He was convicted of neglect under Count I for failure to obtain medical treatment for Arrin at a time when Taylor was aware of a high probability that Arrin's condition was such that, without medical treatment, his health and life were endangered. Such also constitutes a violation of I.C. 35–46–1–4(a)(1). *See Sample, supra.*

Unlike *Shipley*, neither of the acts underlying Tyler's convictions, i.e., placing Arrin's face in scalding water and subsequently failing to seek medical treatment, was the means by which the other act was accomplished. The two acts were separate and distinct, not continuous, and each comprises a violation of I.C. 35–46–1–4(a)(1). As our supreme court has stated,

> "In addressing whether a claim of double jeopardy is valid, we focus on:
> whether the offenses spring from the same act or operative circumstances. The inquiry into whether the offenses stem from the same act is merely the first step in the analysis. If the offenses are premised upon different acts, the problem is not so great." *Derado v. State* (1993), Ind., 622 N.E.2d 181, 182 (quoting *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893, 894.

Because Taylor's convictions were based upon two separate acts, conviction of two counts of neglect of a dependent did not violate the fifth amendment double jeopardy prohibition.

Judgment affirmed.

SULLIVAN and ROBERTSON, JJ., concur.