Steven SHARP, Barbara Sharp,
Appellants (Defendants Below),

v.

STATE of Indiana, Appellee.

No. 34A028905CR00230.

Court of Appeals of Indiana,
Second District.

March 26, 1991.

Stephen C. Litz, Indianapolis, for appellants.

Linley E. Pearson, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Office of Attorney General, Indianapolis, for appellee.

## MEMORANDUM DECISION

SULLIVAN, Judge.

Steven Sharp (Steven) and Barbara Sharp (Barbara) present a consolidated appeal challenging their respective convictions. Steven and Barbara were tried jointly by a jury. Steven was convicted of two counts of conspiracy to deal cocaine or a narcotic drug, class A felonies, one count of conspiracy to deal a Schedule I, II, or III

**964**

drug, a class B felony, and one count of conspiracy to maintain a common nuisance, a class D felony. Barbara was convicted of two counts of conspiracy to deal cocaine or a narcotic drug, class A felonies, one count of conspiracy to deal a Schedule I, II, or III drug, a class B felony, one count of conspiracy to maintain a common nuisance, a class D felony, and one count of conspiracy to commit theft, a class D felony.

We affirm in part and reverse in part.

Steven and Barbara present the following issues for our review, which we restate:

I. Whether the court erred in permitting defendants' physicians to testify and in admitting into evidence prescriptions issued by the physicians;

II. Whether the court violated defendants' due process rights by issuing *ex parte* subpoenas for defendants' medical records;

III. Whether the court erred in denying defendants' motion for change of venue;

IV. Whether the charges against Steven were barred by double jeopardy considerations and by Ind.Code 35–41–4–4;

V. Whether the court erred in overruling an objection to the prosecutor's reference in opening argument to Barbara's use of drugs;

VI. Whether the court erred in refusing to grant Steven's motion for mistrial after Barbara's daughter testified that Steven raped her;

VII. Whether the court erred in admitting the hearsay statements of the deceased informants without a showing that the statements were reliable;

VIII. Whether the prosecutor impermissibly commented upon Barbara's right to remain silent;

IX. Whether the court erred in admitting defendants' divorce decree;

X. Whether there was sufficient evidence to support Barbara's conviction of conspiracy to commit theft;

XI. Whether the prosecutor's statement concerning the "war on drugs" in final argument was erroneous;

XII. Whether the evidence was sufficient to convict the defendants of one conspiracy to maintain a common nui-

sance, and three conspiracies to sell drugs;

XIII. Whether the court erred in giving certain final instructions and in refusing two of defendants' tendered instructions;

XIV. Whether the court erred in imposing consecutive sentences upon defendants.

I.

Steven and Barbara argue that the court erred in allowing their physicians to testify and in admitting written prescriptions. During trial, the State called as witnesses several doctors who had previously treated the defendants. The defendants objected upon grounds that the testimony was privileged and inadmissible.

Indiana Code 34–1–14–5 (Burns Code Ed. Repl.1984) provides, in part:

"The following persons shall not be competent witnesses: ...

Fourth. Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases."

The defendants contend that under this statute, the physicians were incompetent and should not have been permitted to testify. We disagree.

■ Evidentiary privileges are disfavored and are strictly construed. *See Hulett v. State* (1990) 2d Dist.Ind.App., 552 N.E.2d 47, *trans. denied.* The statute creates a limited physician-patient privilege and protects only communications necessary for treatment or diagnosis looking toward treatment. *Lomax v. State* (1987) 1st Dist.Ind.App., 510 N.E.2d 215.

■ In the present case, two of the physicians who were called as witnesses testified that they treated Barbara and submitted insurance claims to Blue Cross Blue Shield under Steven's insurance policy. Neither doctor revealed any communications by Barbara necessary for diagnosis or treatment. Because the doctors' testimony was limited to insurance claims and did not reveal any communications concerning treatment or diagnosis, there was nothing privileged in the testimony.

■ Four other physicians testified that they treated Steven and wrote prescriptions for various controlled substances during a period of time. The State also introduced several prescriptions which the doctors individually identified as prescriptions written by them on behalf of Steven. None of the physicians stated the reasons for treatment or divulged any statements made by Steven during the course of treatment. Because the testimony was confined to the drugs prescribed and the actual prescriptions, it is our opinion that neither the doctors' testimony nor the prescriptions were privileged. In this case, the testimony about the prescriptions and the actual prescriptions are outside the scope of the privilege set forth in Ind.Code 34–1–14–5.

■ Our holding is based in part upon an analysis of the nature of prescriptions. Essentially, a prescription is a communication by a doctor to a pharmacist written for the benefit of a patient. Prescriptions are privileged under Ind.Code 25–26–13–15 (Burns Code Ed.Repl.1982). However, that statute contains the following important exception:

"(b) A person who has knowledge by virtue of his office of any prescription drug order, record, or patient information may not divulge such information *except in connection with a criminal prosecution* or proceeding or a proceeding before the board, to which the person to whom the information relates is a party." (Emphasis supplied.)

We hold that when, as here, the patient on whose behalf the prescription is written is a defendant in a criminal prosecution involving the prescription, the prescription is not privileged. A reading of this statute in conjunction with Ind.Code 34–1–14–5 leads us to conclude that a physician's testimony, limited solely to drugs prescribed or prescriptions, is not privileged.[1] This holding

is consistent with our Supreme Court's opinion in *Green v. State* (1971) 257 Ind. 244, 274 N.E.2d 267, 273:

"Where ... the privilege is used to conceal the commission of a crime, it has no social value and serves no public purpose but in fact is turned into a shield to the criminal and the commission of the crime.... It has been stated as a general proposition that professional communications are not privileged when made for an unlawful purpose having for their objective the commission of a crime."

*See also Lomax, supra,* 510 N.E.2d at 218.

\* \* \*

### IV.

■ Steven argues that the court committed fundamental error in allowing him to be charged with the drug conspiracy charges and erred in denying his motion to dismiss the conspiracy to maintain a common nuisance charge. He maintains that the charges violate the double jeopardy provisions of the United States Constitution and the Indiana Constitution. He also contends that under Ind.Code 35–41–4–4 (Burns Code Ed.Repl.1985), the conspiracy charges against him should have been dismissed.

Steven was previously convicted of several counts of dealing a Schedule I, II or III controlled substance and one count of maintaining a common nuisance. He appealed these convictions to our Supreme Court. *Sharp v. State* (1989) Ind., 534 N.E.2d 708. In his brief in this appeal, Steven asserts:

"The present case is nothing more than the conspiracy charges resulting from the underlying offenses as charged in the former case.... Those charges should have been brought in the former prosecution." Brief of Appellant at 27.

---

1. We acknowledge that, under some circumstances, the actual treatment, and not just those statements of the patient which are necessary for treatment, may be privileged. In *State v. Jaggers* (1987) 4th Dist.Ind.App., 506 N.E.2d 832, *trans. denied,* our Fourth District held that the State could not discover from a chiropractor the names and addresses of patients who had consulted him for acupuncture. In so holding, the court stated:

"Clearly, the method or means by which a physician treats his patient is so intimately connected with the nature of the patient's illness, malady or injury, the mere revelation thereof may tacitly reveal the patient's illness, injury, or malady." *Id.* at 835.

Nevertheless, under Ind.Code 25–26–13–15, prescriptions and information about prescriptions are not privileged when the person writing the prescription, named in it, or filling it, is a party in a criminal proceeding.

Steven argues that his convictions violate both the Indiana and United States constitutional provisions against double jeopardy. Although he concedes that conspiracy is not a necessarily included offense of the substantive crime, he argues that the conspiracy charges in this case were lesser included offenses *as charged* of the substantive crimes of which he was previously convicted.

However, Steven has neglected to provide us with a record from which we can review the allegations about his former appeal. The State correctly notes that it is the appellant's duty to provide a record which reflects the error alleged. *Stallings v. State* (1987) Ind., 508 N.E.2d 550. In his Reply Brief, Steven asks that we take judicial notice of the offenses charged in the prior proceeding. Although, generally, a trial court may not take judicial notice of prior proceedings,[2] the rule for judicial notice at the appellate level is not quite as straight forward. In *Indiana Revenue Board v. Hansbrough* (1981) 275 Ind. 426, 417 N.E.2d 311, our Supreme Court held that the Court of Appeals may search its own records to determine if the issues raised in an appeal were fully decided in a former appeal. The breadth of the holding in *Hansbrough* is not apparent from the opinion. Although *Hansbrough* would seem to hold that it is appropriate for us to review the record of Steven's first appeal, we decline to give an expansive interpretation to that case. We are cognizant that a reviewing court serves a different function than a trial court. In limited situations, this court has previously examined the record filed in a former appeal to ascertain facts necessary to interpret the holding of the case. *Hudson v. Hudson* (1985) 2d

Dist.Ind.App., 484 N.E.2d 579, 582; *see also Pepple v. Parkview* (1987) 3d Dist.Ind. App., 511 N.E.2d 467, 470, n. 1 (Sullivan, J., dissenting), *aff'd,* (1989) Ind., 536 N.E.2d 274. On the basis of this more limited authority, we have examined the information against Steven in the prior proceeding, and determine that Steven's argument is without merit. The information shows that the conspiracies were not included as charged and there is no violation of double jeopardy. *See Hopper v. State* (1985) Ind., 475 N.E.2d 20.

Steven also contends that the present charges should have been dismissed pursuant to Ind.Code 35–41–4–4.[3] Ind.Code 35–41–4–4 provides, in relevant part:

"(a) A prosecution is barred if all of the following exist:

(1) There was a former prosecution of the defendant for a different offense or for the same offense based on different facts.

(2) The former prosecution resulted in an acquittal or a conviction of the defendant. . . .

(3) The instant prosecution is for an offense with which the defendant should have been charged in the former prosecution."

In *Seay v. State* (1990) Ind., 550 N.E.2d 1284, 1288, our Supreme Court held that Ind.Code 35–41–4–4(a)(3) does not

"*automatically* bar successive prosecutions for separate offenses which are committed at the same time or during the same general criminal episode. Neither can it be interpreted to bar successive prosecutions for separate offenses arising from temporally distinct criminal episodes." (Emphasis supplied.)[4]

---

2. *See Hutchinson v. State* (1985) Ind., 477 N.E.2d 850 (judicial notice by same trial court improper even on a related subject with related parties); *Moser v. State* (1990) 2d Dist.Ind.App., 562 N.E.2d 1318; *but see State v. Hicks* (1988) Ind., 525 N.E.2d 316.

3. This argument is distinct from the double jeopardy argument. Double jeopardy considerations relate to a subsequent prosecution for the same offense and are implicit in I.C. 35–41–4–3. I.C. 35–41–4–4 speaks of "a different offense," or different essential facts.

4. There are frequently double jeopardy implications when different statutory offenses are committed at the same time. Crimes have been held to be "one continuous transaction when they are closely connected in time, place, and continuity of action." *Eddy v. State* (1986) Ind., 496 N.E.2d 24, 28. *See also Bowling v. State* (1990) Ind., 560 N.E.2d 658; *Ellis v. State* (1988) Ind., 528 N.E.2d 60.

The words "should have been charged" must be read in conjunction with Indiana's joinder statute, Ind.Code 35–34–1–9, which is permissive and does not necessarily require the State to join all offenses from the same time period in one information or indictment. *See State v. Burke* (1983) 3d Dist.Ind.App., 443 N.E.2d 859.

On the basis of this authority, we conclude that the court did not commit fundamental error by failing to sua sponte dismiss the drug conspiracy charges and did not err in denying Steven's motion to dismiss the conspiracy to maintain a common nuisance charge.

\* \* \*

## VI.

■ Steven argues that the court erred in refusing to declare a mistrial when the State allegedly injected an evidentiary harpoon. The State called Barbara's daughter, Wendy, as a witness. During cross-examination of Wendy, defense counsel asked, "Wendy, you don't like Steve Sharp, right?" Record at 1438. The prosecutor objected and requested to be heard outside the presence of the jury. The following discussion occurred:

> "[Prosecutor]: Your Honor, in the pretrial proceedings in this case the defendants have filed several Motions in Limine prohibiting the State of Indiana from introducing evidence of uncharged crimes. The State of Indiana believes that this particular question, if answered by the witness, would reveal the existence of an uncharged crime by the defendant, Steven Sharp. I think that this question amounts to nothing more than an evidentiary harpoon where if the witness answers yes, then the prosecution is forced to ask the question why, which violates the motion in limine which brings up the subject of uncharged crimes so I feel that this question is totally improper and should not be asked of this witness.
>
> JUDGE BRUBAKER: O-k. Let me put it this way. I've learned the hard way by reversal that I will give the defendants a lot of latitude to show bias and prejudice and the reason for it. However, if something comes out that would then keep the State from asking for evidence that would be important to explain her answer, then I will set aside that portion of any motion in limine and allow the State to go in it even though it would be uncharged misconduct, so that's the way the Court will handle it." Record at 1438–1440.

When the jury returned the witness was asked by defense counsel if she remembered the question. She indicated that she did. Defense counsel asked her what her answer was, and she replied, "Steve had raped me when I was younger." Record at 1441.

Counsel for Steven requested the jury to be excused and moved for mistrial. The court denied the motion. Counsel for Barbara requested that the court give a limiting instruction, and the court instructed the jury, "I'm going to direct you to disregard the answer to that question as being non-responsive to the question. You are to disregard it and consider it as if it were never spoken." Record at 1445.

Steven argued at trial and argues here that the answer given by the witness was deliberate and done with the prior knowledge of the prosecutor. He contends that the remark placed him in a position of grave peril and that the court erred in not declaring a mistrial. The decision to grant a mistrial rests within the discretion of the trial court, and the defendant must demonstrate that he was placed in a position of grave peril to which he should not have been subjected. *Kelley v. State* (1990) Ind., 555 N.E.2d 140. Steven has failed to demonstrate that he was placed in such a position.

Defense counsel was warned by the court that if the answer to his question called for explanation, the State would be permitted to ask the witness to explain her answer, despite the motion in limine. Therefore, even if the witness had not volunteered the explanation and had merely responded that she did not like Steven, the State would have been allowed to explore the explanation on re-direct. *See Ratcliffe v. State* (1990) Ind., 553 N.E.2d 1208; *Woodford v. State* (1980) 273 Ind. 487, 405 N.E.2d 522.

Moreover, the court admonished the jury to disregard Wendy's answer, thereby limiting its prejudicial impact. It may well be that the admonition was not necessary because defense counsel asked the question and invited a damaging response. Nevertheless, the court did not err in denying Steven's motion for mistrial.

\* \* \*

## X.

Barbara argues that there was insufficient evidence to convict her of conspiracy to commit theft. The crime of conspiracy is defined in Ind.Code 35–41–5–2 (Burns Code Ed.Repl.1985), which provides, in relevant part:

"(a) A person conspires to commit a felony when, with intent to commit the felony, he agrees with another person to commit the felony....

(b) The state must allege and prove that either the person or the person with whom he agreed performed an overt act in furtherance of the agreement."

Barbara first contends that there was insufficient evidence of an agreement. In *Whittle v. State* (1989) Ind., 542 N.E.2d 981, 992, our Supreme Court stated:

"While a conspiracy entails an intelligent and deliberate agreement between the parties, the State is not required to prove the existence of a formal express agreement.... The agreement, as well as the requisite guilty knowledge and intent, may be inferred from circumstantial evidence, including overt acts in furtherance of the criminal act."

*See also Frias v. State* (1989) Ind., 547 N.E.2d 809. The record in this case reflects that the parties were divorced in 1978 and never remarried. Steven nevertheless listed Barbara as his wife on his insurance forms in 1983 and 1986. Barbara received medical treatment in August, 1986. The State introduced the hospital admission record dated August 27, 1986 and signed by Barbara. The record shows that Barbara claimed to be insured by Blue Cross through her husband, Steven Sharp. The admissions clerk for the hospital testified that the information appearing on the admission form comes from the patient. The State also presented evidence that claims made on behalf of Barbara were

paid under Steven's policy. This evidence was sufficient to permit an inference that Barbara and Steven agreed to illegally obtain insurance benefits.

Barbara also argues that the evidence is insufficient as a matter of law. After the State rested its case, both Steven and Barbara moved for judgment on the evidence. The court granted judgment on the evidence with respect to the substantive theft charges against both defendants. However, the court denied the defendants' motion on the other charges, including the conspiracy to commit theft charge against Barbara. After ruling on the motion, the judge indicated that he thought the theft charges were "quite honestly mischarged". Record at 2314. Barbara argues that if the theft charges were mischarged, the conspiracy to commit theft charge against her must have been mischarged. She also maintains that the guilty verdict on the conspiracy count was "necessarily inconsistent with the court's acquittal of Barbara on the theft counts." Brief of Appellant at 38.

We note that Barbara's argument here assumes that the court was correct in indicating that the theft counts were mischarged. The theft statute provides, in relevant part:

"(a) A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a Class D felony." Ind.Code 35–43–4–2 (Burns Code Repl.1985).

Barbara argues that the evidence was insufficient to show that she conspired with Steven to exert control over the property of Blue Cross. However, such an assertion ignores Ind.Code 35–43–4–6 (Burns Code Ed.Repl.1985). That statute provides:

"(b) Evidence that a person:

(1) permitted a person who was not entitled to a benefit to use his benefit identification card to obtain a benefit; or

(2) uses his benefit identification card to obtain a benefit for a person who was not entitled to the benefit;

constitutes prima facie evidence that such person exerted unauthorized control over property of the benefit provider." The statute also defines "benefit" as "any accident, sickness, or other health care or reimbursement therefor to which a person is entitled." Ind.Code 35–43–4–6(a).

In this case, the evidence shows that Steven listed Barbara as his wife on his health enrollment form with Blue Cross, knowing Barbara was not his wife and therefore not entitled to benefits. We have already stated that the evidence supports a reasonable inference that Steven and Barbara agreed to obtain benefits from Blue Cross to cover Barbara's health care. The evidence is not insufficient as a matter of law.

Moreover, we cannot conclude that the guilty verdict on this conspiracy charge was inconsistent with the court's acquittal on the substantive theft charges. Acquittal of the substantive offense does not preclude a conviction of conspiracy to commit the offense. *Hopper v. State, supra,* 475 N.E.2d 20; *Hossman v. State* (1985) 1st Dist.Ind.App., 482 N.E.2d 1150, *trans. denied; Huff v. State* (1983) 1st Dist.Ind. App., 443 N.E.2d 1234.

\*     \*     \*

### XII.

\*     \*     \*

■ B. The defendants argue that the evidence is insufficient to support two convictions each of conspiracy to sell a narcotic drug and one conviction each of conspiracy to sell a Schedule III drug. Again, the defendants admit they committed the substantive offenses but argue that the evidence is insufficient to show even one agreement to commit those offenses.

Although we determine that there is sufficient circumstantial evidence from which the jury could conclude beyond a reasonable doubt that the defendants agreed with Anthony and Lois Tolleson to sell the narcotic drugs, Demerol and Percodan, and the Schedule III drug, Vicodin, the evidence is insufficient to prove three separate agreements to sell these drugs.

Several witnesses testified that, primarily from 1985 until February of 1987, Barbara and Steven sold Percodan, Vicodin and Demerol to Anthony and Lois Tolleson. Several witnesses also testified that they bought drugs from the Tollesons. Wendy Sunday testified that the Tollesons came to the Sharps' house at least once a week and purchased drugs from either Barbara or Steven or both. She stated that the Tollesons would generally call to see if Steven had what they wanted and would come over and buy it if he did. She also testified that Steven was the Tollesons' supplier, and that sometimes when Lois came to the Sharps' house, people would be waiting for her in the car.

Barnard Sanderson, Dana Faucett and Jane Faucett all testified that, on different occasions, they went with either Lois or Anthony to the Sharps' house and waited in the car while Anthony or Lois went in and came back with Demerol, Percodan or Vicodin or some combination of those drugs. Dana Faucett testified that Anthony told Dana that Anthony got his drugs from Steven and Barbara Sharp. Michael Mills testified that he worked with Lois Tolleson during part of 1986 and 1987. He stated that she would get messages from Barbara or Steven Sharp and would leave the store returning later with Demerol.

From this evidence, the jury could reasonably infer that Barbara and Steven had an agreement with the Tollesons to deal narcotic drugs. However, the evidence is insufficient to prove that the Sharps had three separate agreements to sell each type of drug.

In *Perkins v. State* (1985) Ind., 483 N.E.2d 1379, 1386, our Supreme Court held,

"The gist of the offense of conspiracy is the agreement. A single agreement to commit several unlawful acts cannot be punished by multiple convictions under a general conspiracy statute." *See also, Braverman v. United States* (1942) 317 U.S. 49, 63 S.Ct. 99 [87 L.Ed. 23].

The determination of whether there exists one agreement or multiple agreements depends upon several factors, including: the

nature of the criminal scheme; overlapping participants; proximity in time; and the frequency, quality and duration of the co-conspirators' involvement in each crime. *Mftari v. State* (1989) Ind., 537 N.E.2d 469, 475; *Ridgeway v. State* (1981) 2d Dist.Ind. App., 422 N.E.2d 410, 414. In *Ridgeway*, we noted that there is a danger in confusing separate acts and separate crimes with separate conspiracies. 422 N.E.2d at 413.

> "Almost any venture, criminal or legitimate, is analyzable into a series of bits, each of which, in turn, is characterizable as an independent plan or goal. The standard for determining the existence of a single conspiracy, however, '... is whether there was one overall agreement among the various parties to perform various functions in order to carry out the objectives of the conspiracy.'" *Ridgeway*, 422 N.E.2d at 413–414, *quoting United States v. Kearney* (9th Cir. 1977) 560 F.2d 1358, *cert. denied* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460.

Although in this case the State presented overwhelming evidence of the Sharps' involvement in drug dealing, the evidence is of such a general nature as to permit only a determination that the agreement was but a single agreement with the Tollesons, although in carrying out that agreement there were multiple sales over a period of time. Unlike *Saunders v. State* (1990) 1st Dist.Ind.App., 562 N.E.2d 729, the evidence here does not demonstrate distinct transactions which may tend to show separate agreements.

In *Saunders*, the evidence established that the informant met with the defendant on three different occasions to purchase drugs. On the first occasion, the informant and the defendant met and arranged to buy cocaine. After that deal was complete, the two met again and a purchase of LSD was arranged. The parties met a third time after the second deal was complete to arrange a purchase of cocaine. The court held that the evidence showed that the defendant "entered into three distinct conspiratorial agreements to commit three separate drug offenses." *Id.* at 739.

The evidence against the Sharps does not show separate arrangements to supply a particular drug for a distinct purpose. The evidence indicates that the Sharps sold, and the Tollesons bought, whatever drugs were available. Moreover, there is no evidence as to when a particular transaction was completed and a new one begun. What emerges from the evidence presented is not discrete transactions, but a single, open-ended agreement to sell several kinds of illegal drugs. We therefore hold that the evidence supports only one conviction of conspiracy to deal narcotic drugs against Barbara and Steven each. The other two conspiracy convictions against both defendants must be vacated.

\* \* \*

The judgments are affirmed in part and reversed in part, and the cause is remanded for further proceedings not inconsistent with this opinion.

BUCHANAN and CONOVER, JJ., concur.