**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MICHAEL FRISCHKORN**
Frischkorn Law LLC
Fortville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAWN JACKSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1308-CR-711 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Wayne A. Sturtevant, Judge
Cause No. 29D05-1210-FD-9964

**March 3, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

**CASE SUMMARY**[1]

Between July 25, 2011 and May 25, 2012, Appellant-Defendant Dawn Jackson filled eleven prescriptions for a narcotic medication at a CVS Pharmacy in Noblesville. In September of 2012, CVS Pharmacies sent an informational letter to Central Indiana Orthopedics ("CIO") noting that a doctor at CIO had consistently prescribed narcotic medications to Jackson. The letter outlined the dangers of prolonged use of narcotic medications. CIO's operations manager checked CIO's records and learned that Jackson had not been seen at CIO since February of 2011, and that CIO did not have a record of any prescriptions written for Jackson since that time. The CIO operations manager subsequently reported the matter to police.

Appellee-Plaintiff the State of Indiana subsequently charged Jackson with eleven counts of Class D felony counterfeiting. Prior to trial, Jackson moved to suppress certain evidence relating to the eleven prescriptions for the narcotic medication. This motion was denied. At trial, Jackson objected to the admission of the challenged evidence. Jackson's objection to the admission of this evidence was overruled. Following a jury trial, Jackson was found guilty as charged. On appeal, Jackson contends that the trial court abused its discretion in admitting certain evidence at trial. Jackson also contends that the evidence is insufficient to sustain her convictions for Class D felony counterfeiting. We affirm.

**FACTS AND PROCEDURAL HISTORY**

---

[1] The transcript portion of the record was created in conjunction with the Indiana Supreme Court's pilot project for the use of expedited transcripts on appeal. We wish to thank Judge Sturtevant and the parties for their cooperation in the pilot project.

At some point prior to February of 2011, Dr. Francesca Tekula, a neurosurgeon at CIO, treated Jackson for a back injury and provided Jackson with a prescription for Norco, a generic narcotic pain medication. On February 28, 2011, Jackson called CIO and requested an early refill of her Norco prescription. Dr. Tekula authorized the refill but noted that she would not provide any further prescriptions for Jackson because Jackson's care was being turned over to a different physician.

Between July 25, 2011 and May 25, 2012, Jackson filled eleven prescriptions for Norco at a CVS Pharmacy in Noblesville. Each of the prescriptions was for ninety pills and purported to be written by Dr. Tekula. In September of 2012, CVS Pharmacies sent an informational letter to CIO noting that Dr. Tekula had consistently prescribed narcotic medications to Jackson. The letter outlined the dangers of prolonged use of narcotic medications. CIO's operations manager, Jim McCullaugh, checked CIO's records and learned that Jackson had not been seen at CIO since February of 2011, and that CIO did not have a record of any prescriptions written for Jackson since that time.

After discovering that the prescriptions in question had not been written or authorized by Dr. Tekula, McCullaugh reported the matter to police. Detective Timothy Hendricks of the Noblesville Police Department spoke with McCullaugh about the allegedly unauthorized prescriptions. Detective Hendricks then went through the statutory authorization process to obtain a username and password permitting him to access the INSPECT[2] database. From this

---

[2] "'INSPECT' means the Indiana scheduled prescriptions electronic collection and tracking program established by IC 35-1-13-4." Ind. Code § 35-48-7-5.2.

database, Detective Hendricks discovered that Jackson had filled nine prescriptions for Norco since July of 2011, and that each of these prescriptions were allegedly written by Dr. Tekula. Detective Hendricks then contacted the CVS pharmacy where the prescriptions had been filled and obtained copies of the prescriptions.

At some point, Jackson was interviewed by police. Jackson admitted to filling all eleven of the prescriptions in question and acknowledged that the pharmacy verified her identity and wrote her driver's license number on each prescription when it was filled. Jackson told police that she had called CIO and begged a nurse for each prescription due to continuing pain. She stated that a nurse arranged the prescriptions for her and that she picked them up from the CIO office. Jackson, however, could not name the nurse or anyone else from CIO who had allegedly helped her.

On October 29, 2012, the State charged Jackson with eleven counts of Class D felony counterfeiting. On March 8, 2013, Jackson filed a motion to suppress certain evidence relating to the eleven prescriptions for Norco. Jackson's motion was denied following a hearing on April 30, 2013. On June 13, 2013, the trial court conducted a jury trial. Jackson objected to the admission of the challenged evidence at trial. Jackson's objections were overruled. Dr. Tekula testified during trial that she did not write any of the prescriptions at issue, she had no record of authorizing anyone else to write the prescriptions for Jackson, the prescriptions contained a notation that she does not use, and the signature on each of the prescriptions was not her signature. Following the conclusion of trial, the jury found Jackson guilty as charged. On July 22, 2013, the trial court sentenced Jackson to concurrent terms of

4

545 days on each count and ordered all but time served to be suspended to probation.

## DISCUSSION AND DECISION

On appeal, Jackson contends that the trial court abused its discretion in admitting certain evidence at trial. Jackson also contends that the evidence is insufficient to sustain her convictions for Class D felony counterfeiting.

## I. Admission of Evidence

Jackson contends that the trial court abused its discretion in admitting the INSPECT report and copies of the eleven prescriptions for Norco into evidence at trial.[3] Although Jackson originally challenged the admission of the evidence through a motion to suppress, she appeals following a completed trial and thus challenges the admission of the evidence at trial. "Accordingly, 'the issue is … appropriately framed as whether the trial court abused its discretion by admitting the evidence at trial.'" *Cole v. State*, 878 N.E.2d 882, 885 (Ind. Ct. App. 2007) (quoting *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003)).

> Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by an objection at trial. *Ackerman v. State*, 774 N.E.2d 970, 974-75 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. We also consider uncontroverted evidence in the defendant's

---

[3] To the extent that Jackson argues that the trial court abused its discretion in admitting certain medical records obtained from CIO, we observe that Jackson has failed to present any cogent argument in support of this claim. Indiana Appellate Rule 46(A)(8) provides in relevant part, "The argument must contain the contentions of the appellant on the issues presented supported by cogent reasoning. Each contention must be supported by citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on." A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record. *Lyles v. State*, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005), *trans. denied*; *Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005), *trans. denied*. Accordingly, Jackson has waived this issue for appellate review.

favor. *Id.*

*Id.*

A trial court has broad discretion in ruling on the admissibility of evidence. *Washington*, 784 N.E.2d at 587 (citing *Bradshaw v. State*, 759 N.E.2d 271, 273 (Ind. Ct. App. 2001)). Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. *Id.* (citing *Bradshaw*, 759 N.E.2d at 273). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id.* (citing *Huffines v. State*, 739 N.E.2d 1093, 1095 (Ind. Ct. App. 2000)). In the instant matter, Jackson argues that the trial court abused its discretion in admitting the INSPECT report and copies of the eleven prescriptions for Norco because the report and prescriptions were obtained in violation of her constitutional rights under both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution.

**A. INSPECT Report**

On appeal, Jackson argues that the trial court abused its discretion in admitting the INSPECT report into evidence because the report was obtained through actions which constitute an illegal search under both the Fourth Amendment and Article I, Section 11. Initially we note that it does not appear that the INSPECT report was actually admitted into evidence during trial. However, even if the report was admitted, Jackson did not challenge the admission of the INSPECT report or any testimony relating to the INSPECT report on constitutional grounds at trial. Jackson only objected to Detective Hendricks's testimony

6

relating to the INSPECT report on hearsay grounds. Jackson does not make a hearsay argument on appeal. In addition, it is interesting to note that Jackson acknowledged during the suppression hearing that the report was likely admissible.

Failure to make a contemporaneous objection to the admission of evidence at trial generally results in waiver of the error upon appeal. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010); *Lewis v. State*, 755 N.E.2d 1116, 1122 (Ind. Ct. App. 2001). "Moreover, a defendant cannot object on one ground at trial and then raise a different claim of error on appeal." *Lyons v. State*, 976 N.E.2d 137, 141 (Ind. Ct. App. 2012). In light of Jackson's failure to make a cotemporaneous objection at trial to the admission of the INSPECT report on the grounds argued on appeal, we conclude that Jackson has waived her appellate challenge to the alleged admission of the report itself as well as the testimony relating to the report.

### B. Copies of Prescriptions

Again, Jackson challenges the admission of the copies of the eleven prescriptions for Norco under both the Fourth Amendment and Article I, Section 11. We will discuss each challenge in turn.

### 1. The Fourth Amendment

Jackson argues that the trial court abused its discretion in admitting the copies of the challenged prescriptions obtained from CVS into evidence because Detective Hendricks obtained the copies without first receiving a search warrant.

> The Fourth Amendment to the United States Constitution provides all citizens
> with "[t]he right of people to be secure in their persons, houses, papers, and

> effects, against unreasonable searches and seizures ...." U.S. CONST. amend.
> IV; *see also Black v. State*, 810 N.E.2d 713, 715 (Ind. 2004). The Fourth
> Amendment's protection against unreasonable search and seizure has been
> extended to the states through the Fourteenth Amendment. *See Berry v. State*,
> 704 N.E.2d 462, 464-65 (Ind. 1998).

*Bentley v. State*, 846 N.E.2d 300, 305 (Ind. Ct. App. 2006).

"'Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure.'" *Id*. at 869 (Ind. Ct. App. 2006) (quoting *Lyons v. State*, 735 N.E.2d 1179, 1184 (Ind. Ct. App. 2000), *trans. denied*). Jackson claims that the trial court abused its discretion in admitting the copies of the eleven prescriptions for Norco because Detective Hendricks did not obtain a search warrant before obtaining them. Specifically, Jackson claims that the prescriptions fall under Fourth Amendment protection because the prescriptions contain personal medical information to which an individual has a legitimate expectation of privacy.

"'In order for the Fourth Amendment to be implicated by a governmental search, a person must have a legitimate expectation of privacy in the thing searched.'" *Planned Parenthood of Ind. v. Carter*, 854 N.E.2d 853, 868-69 (Ind. Ct. App. 2006) (quoting *Hannoy v. State*, 789 N.E.2d 977, 990 (Ind. Ct. App. 2003), *trans. denied*). "'A legitimate expectation of privacy involves two components: (1) an actual, subjective expectation of privacy (2) that society recognizes as reasonable.'" *Id*. at 869 (quoting *Hannoy*, 789 N.E.2d at 990). We have previously concluded that a patient has a legitimate expectation of privacy in medical information sufficient to implicate the Fourth Amendment. *Id*. at 873. However, we have also previously acknowledged that the patient's legitimate expectation of privacy in medical information is not unlimited and must be balanced against the State's interest in

8

investigating unlawful behavior by the patient. *See id.* at 878.

A prescription is essentially a communication by a doctor to a pharmacist written for the benefit of a patient. *Sharp v. State*, 569 N.E.2d 962, 965 (Ind. Ct. App. 1991). Prescriptions are generally considered to be privileged under Indiana Code section 25-26-13-15. *Id.* However, where, as here, the patient on whose behalf the prescription was allegedly written is a defendant in a criminal prosecution involving the prescription, the prescription is not privileged. *Id.* Jackson acknowledges the precedent set by *Sharp* that a prescription loses its privilege when the individual for whom the prescription is written is a defendant in a criminal prosecution involving the prescription. Jackson argues, however, that this loss of privilege should not be extended to her constitutionally recognized expectation of privacy in the medical information contained in the prescription. We cannot agree.

Again, in *Planned Parenthood*, we recognized that an individual's expectation of privacy in medical information is not unlimited and must be balanced against the State's interest in investigating potential unlawful behavior by the individual. 854 N.E.2d at 878. We believe that this is especially true in situations such as that considered by *Sharp*, as well as the situation presented in the instant matter, where the alleged unlawful behavior is directly connected to the individual's medical information. In the instant matter, Detective Hendricks was investigating Jackson's alleged unlawful act of filling eleven counterfeit prescriptions for a narcotic drug. The prescriptions in question did not contain any medical information other than the name and identifying information relating to appropriate dosage of the prescribed medication. In addition, the prescriptions did not contain any information

9

regarding why the particular pain medication was being prescribed.

When balanced against the State's interest in investigating Jackson's alleged unlawful behavior, we cannot say that the trial court abused its discretion in determining that the prescriptions at issue did not invoke constitutional protection that would necessitate the requirement for a search warrant under the Fourth Amendment. Furthermore, we are particularly persuaded by the State's argument that constitutional protection should not be extended to situations where the prescription at issue is alleged to be counterfeit because if proven to be counterfeit, the prescription does not contain any privileged constitutionally protected medical information relating to the patient. As such, we conclude that Jackson's rights under the Fourth Amendment were not violated.

## B. Article I, Section 11

Jackson also argues that the admission of the challenged evidence violated her rights under Article I, Section 11.

> Article I, Section 11 provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated...." The purpose of this article is to protect from unreasonable police activity those areas of life that Hoosiers regard as private. *Moran v. State*, 644 N.E.2d 536, 540 (Ind. 1994). The provision must receive a liberal construction in its application to guarantee the people against unreasonable search and seizure. *Brown v. State*, 653 N.E.2d 77, 79 (Ind. 1995).

*State v. Quirk*, 842 N.E.2d 334, 339-40 (Ind. 2006).

> "While almost identical to the wording in the search and seizure clause of the federal constitution, Indiana's search and seizure clause is independently interpreted and applied." *Baniaga v. State*, 891 N.E.2d 615, 618 (Ind. Ct. App. 2008). Under the Indiana Constitution, the legality of a governmental search turns on an evaluation of the reasonableness of the police conduct under the

10

> totality of the circumstances. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005).… The burden is on the State to show that under the totality of the circumstances, the intrusion was reasonable. *Id.*

*Hathaway v. State*, 906 N.E.2d 941, 945 (Ind. Ct. App. 2009).

For the reasons stated in our analysis relating to the Fourth Amendment, we conclude that the admission of the copies of the eleven prescriptions for Norco was reasonable under the totality of the circumstances. Again, we have recognized that an individual's expectation of privacy in medical information is not unlimited and must be balanced against the State's interest in investigating potential unlawful behavior by the individual. *Planned Parenthood*, 854 N.E.2d at 878. As we stated above, we believe that this is especially true in situations such as that considered by *Sharp*, as well as the situation presented in the instant matter, where the alleged unlawful behavior is directly connected to the individual's medical information.

In the instant matter, the State had a legitimate interest in investigating Jackson's alleged unlawful behavior, *i.e.*, filling eleven counterfeit prescriptions for a narcotic drug. Again, the prescriptions in question did not contain any medical information other than the name and identifying information relating to appropriate dosage of the prescribed medication, and did not contain any information regarding why the particular pain medication was being prescribed. Upon balancing the totality of the circumstances, we conclude that Detective Hendricks's actions were reasonable. As such, we conclude that Jackson's rights under Article I, Section 11 were not violated.

## II. Sufficiency of the Evidence

11

Jackson also contends that the evidence is insufficient to sustain her convictions for Class D felony counterfeiting.

> When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

*Drane v. State*, 867 N.E.2d 144, 146-47 (Ind. 2007) (citations, emphasis, and quotations omitted). "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original). Upon review, appellate courts do not reweigh the evidence or assess the credibility of the witnesses. *Stewart v. State*, 768 N.E.2d 433, 435 (Ind. 2002).

Indiana Code section 35-43-5-2(a) provides that "[a] person who knowingly or intentionally: (1) makes or utters a written instrument in such a manner that it purports to have been made: (A) by another person … commits counterfeiting, a Class D felony." "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do

12

so." Ind. Code § 35-41-2-2(a).

The evidence presented at trial demonstrates that Jackson submitted eleven counterfeit prescriptions to be filled at CVS. Jackson acknowledges that CVS verified and noted her identity when she filled these prescriptions. Jackson, therefore, does not argue that she did not fill the prescriptions at issue, but rather claims the evidence is insufficient to prove that she knew the prescriptions were counterfeit. We cannot agree.

Jackson claims that she called CIO and begged a nurse for the prescriptions due to continuing pain. Jackson further claims that she then drove to CIO and picked up the prescriptions from a nurse. Jackson, however, cannot name any nurse or other individual at CIO whom she claims that she talked to or assisted her in this regard. The jury, acting as the trier of fact, was free to believe or disbelieve Jackson's account as it saw fit. *See Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004); *McClendon v. State*, 671 N.E.2d 486, 488 (Ind. Ct. App. 1996); *Moore v. State*, 637 N.E.2d 816, 822 (Ind. Ct. App. 1994), *trans. denied*.

Further, our review of the record demonstrates that Dr. Tekula testified that Indiana law requires her to sign all prescriptions for narcotic drugs that are written or authorized by her. She further testified that she had not written or authorized anyone to write prescriptions for Jackson at any time after February 28, 2011. Dr. Tekula examined the prescriptions in question and indicated that the handwriting and signature on the prescriptions were not her handwriting or signature and that the prescriptions contained a notation that she does not use. In addition, McCullaugh testified that CIO did not have any record of anyone speaking to Jackson on the phone during the months of July 2011 through May 2012, meeting with

13

Jackson in person at the CIO offices during those months, or providing Jackson with any prescriptions at any time after February 28, 2011.

In arguing that the evidence was insufficient to sustain her convictions, Jackson argues that the State was required, but failed, to present evidence indicating that Jackson was aware of CIO's standard operating procedures and that the prescriptions in question were not obtained in accordance with CIO's standard operating procedures. As such, Jackson claims that the jury was forced to speculate to her knowledge that the prescriptions were not legal. Jackson's claim in this regard effectively amounts to an invitation to reweigh the evidence on appeal, which we will not do. *See Stewart*, 768 N.E.2d at 435.

## CONCLUSION

Because Jackson's rights under the Fourth Amendment and Article I, Section 11 were not violated, the trial court acted within its discretion in admitting the challenged evidence relating to the eleven prescriptions for Norco into evidence at trial. In addition, upon review, we conclude that the evidence is sufficient to sustain Jackson's convictions for Class D felony counterfeiting. Accordingly, we affirm Jackson's convictions.

The judgment of the trial court is affirmed.

KIRSCH, J., and MAY, J., concur.