## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 05 2017, 8:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Stacy R. Uliana
Bargersville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Brandon L. Garner,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | July 5, 2017<br><br>Court of Appeals Case No.<br>62A04-1612-CR-2774<br><br>Appeal from the Perry Circuit Court<br><br>The Honorable Lucy Goffinet, Judge<br><br>Trial Court Cause No.<br>62C01-1603-F3-165 |

**Bradford, Judge.**

# Case Summary

[1] After a jury trial, Appellant-Defendant Brandon L. Garner was convicted of conspiracy to commit dealing in methamphetamine, conspiracy to commit maintaining a common nuisance, and resisting law enforcement. The trial court sentenced Garner to fourteen years executed for conspiracy in dealing, two years for conspiracy in maintaining a common nuisance, and one year for resisting law enforcement. The first and second sentences were ordered to run consecutively and the third sentence was to run concurrent with the first sentence, for an aggregate sentence of sixteen years of incarceration.

[2] Garner argues the following restated issues: 1) whether Garner's convictions for two conspiracies violates the actual evidence test; 2) whether there was a fatal variance between pleading and proof for the conspiracy to deal charge when the State proved that Garner possessed a firearm on the charged date; and 3) whether Garner's sentence was inappropriate in light of the nature of his offenses and his character. Because the two conspiracy convictions violate the actual evidence test, we reverse the trial court, vacate the conspiracy to maintaining a common nuisance conviction, and reduce Garner's sentence by two years. We affirm the trial court on all other issues.

# Facts and Procedural History

[3] Alicia Kellems and Garner met in November of 2015 through mutual friends who used methamphetamine together. The two bonded over their shared

interest in drugs and began dating in January of 2016. It was around this time that Kellems and Garner decided to start buying methamphetamine in Louisville, Kentucky, to resell in Tell City, Indiana. Shortly before their relationship began, Kellems was convicted of dealing in methamphetamine, and Garner was released to parole after having served time for other parole violations.

[4] Starting in January of 2016, Kellems and Garner would regularly drive to Louisville to buy 14 grams of methamphetamine, which they would sell out of a hotel room in Tell City. The couple then personally ingested whatever drugs they were unable to sell.

[5] When Garner and Kellems initially began dealing the methamphetamine, they had to borrow friends' vehicles to retrieve their supply in Louisville because neither one owned a vehicle. Eventually, the two purchased a truck that they registered in Kellems's name because Garner did not have a valid license. The couple drove the truck regularly, and they had joint access to the vehicle. The couple also carried firearms for their own protection when they went to Louisville to buy drugs. From January of 2016 until March of 2016, Kellems and Garner did not have a permanent residence, so they would stay either with Garner's mother or in a hotel. Due to the fact that they did not have a permanent residence, they often kept their personal belongings in their truck.

[6] On the evening of March 16, 2016, a hotel clerk at the Ramada Inn in Tell City called police to inform them that a loud argument was taking place in room 220

and the clerk feared that physical violence may be occurring. Officer Jason Shadwick of the Tell City Police Department was dispatched to the scene. When Officer Shadwick arrived outside of room 220, he could hear a male and a female yelling at each other. The yelling stopped when Officer Shadwick knocked on the door.

[7] Inside the room, Kellems grabbed a loaded handgun and slid it across the bed to Garner. Garner threw the gun out of the room's only window along with their mobile telephones, a bottle of cologne, and a pack of cigarettes. After he threw the items out of the window, Garner hid under the bathroom sink, and Kellems attempted to conceal him by pushing baskets of clothes up against the sink.

[8] Kellems eventually opened the door and allowed Officer Shadwick inside. Officer Shadwick asked Kellems where the other party was and she indicated that he had jumped out of the window. However, after looking at the window, Officer Shadwick discovered that the window had a locking mechanism that would not allow it to open widely enough for a person to fit through it. Concluding that the male he had heard from outside was still in the room, Officer Shadwick escorted Kellems outside. Officer Shadwick then saw an arm sticking out from under the sink and ordered Garner to come out. Garner refused to exit so Officer Shadwick grabbed Garner's wrist to place a handcuff on it. Garner struggled against Officer Shadwick's attempt to extract him and used his elbow to strike Officer Shadwick in the right eye. Despite the struggle, Officer Shadwick was able to place Garner under arrest. Then Officer

Shadwick patted Garner down and found a pill bottle inside of Garner's pocket. Inside of the bottle was a plastic bag containing 3.07 grams of methamphetamine.

[9] During a search of the room, officers found two larger bags containing various drug paraphernalia. One of the bags—a bag with a Mickey Mouse design on it—contained a pill bottle with pseudoephedrine pills and lithium batteries. Inside the other bag, the police found a digital scale with white powder residue, a spoon with residue, various empty plastic bags, a grinder with white residue, another half of a grinder, rolling paper, and a notebook. Police seized $1100 dollars from the room. Finally, a search of Garner and Kellems's truck led to the discovery of three firearms in addition to the one that Garner had thrown out of the window.

[10] Police also recovered the two mobile telephones that had been thrown out of the hotel room's window. The mobile telephones had been used by Garner and Kellems. Text messages referencing methamphetamine deals were later extracted from the mobiles telephones.

[11] On March 21, 2016, the State charged Garner with Level 3 felony conspiracy to commit dealing in methamphetamine, Level 5 felony conspiracy to commit possession of chemical reagents or precursors with intent to manufacture a controlled substance, Level 5 felony conspiracy to commit possession of methamphetamine, three counts of Level 6 felony conspiracy to commit possession of a controlled substance, Level 6 felony unlawful possession of a

syringe, Level 6 felony conspiracy to commit maintaining a common nuisance, Level 6 felony unlawful possession of use of a legend drug, Level 5 felony battery against a public safety official, Class A misdemeanor resisting law enforcement, and four counts of Class C misdemeanor conspiracy to commit possession of paraphernalia. The prosecutor amended and dismissed some of the charges prior to Garner's jury trial. On October 17 and 18, 2016, Garner was tried on Amended Count 1, conspiracy to commit dealing in methamphetamine, a Level 3 felony; Amended Count 2, possession of precursors with the intent to manufacture, a Level 5 felony; Amended Count 3, conspiracy to commit possession of methamphetamine, a Level 5 felony; Amended Count 7, unlawful possession of a syringe, a Level 6 felony; Amended Count 8, conspiracy to commit maintaining a common nuisance, a Level 6 felony; Amended Count 10, battery against a public safety official, a Level 5 felony; and Amended Count 11, resisting law enforcement, a Class A misdemeanor.

[12] The jury acquitted Garner of Amended Count 2, possession of precursors; Amended Count 7, unlawful possession of a syringe; and Amended Count 10, battery against a public safety official. The jury convicted Garner of Amended Count 1, Level 3 felony conspiracy to commit dealing in methamphetamine; Amended Count 3, Level 5 felony conspiracy to possess methamphetamine; Amended Count 8, Level 6 felony conspiracy to maintain a common nuisance; and Amended Count 11, Class A misdemeanor resisting law enforcement. The trial court vacated Garner's conviction for Amended Count 3, Level 5 felony

conspiracy to commit possession of methamphetamine, due to double jeopardy concerns.

[13] On November 16, 2016, the trial court sentenced Garner to fourteen years executed for his conspiracy to deal methamphetamine conviction. For conspiracy to maintain a common nuisance, the trial court imposed a two-year sentence to be served consecutive to the fourteen-year sentence. The trial court also imposed a one-year sentence for resisting law enforcement to be served concurrent with the other two sentences. Garner received an aggregate sixteen-year sentence.

# Discussion and Decision

## I. Actual Evidence

[14] Garner's first argument claims that his dual convictions for conspiracy to deal in methamphetamine and conspiracy to maintain a common nuisance cannot both stand. Garner supports his argument with a "one conspiracy, one conviction" rule and two cases—*Perkins v. State*, 483 N.E.2d 1379 (Ind. 1985) and *Sharp v. State*, 569 N.E.2d 962 (Ind. Ct. App. 1991)—decided before the establishment of the actual evidence test in *Richardson v. State*, 717 N.E. 2d 32 (Ind. 1999). The State agrees with Garner's contention that the conviction for conspiracy to maintaining a common nuisance should be vacated, but relies upon different case law. The State specifically argues that the conviction for conspiracy to maintain a common nuisance should be vacated and the case

should be remanded for re-sentencing because the two convictions violate the actual evidence test from *Richardson*. Due to the fact that the State concedes that one of the convictions should be vacated, and the case law advanced by both parties leads to the same result, we vacate the conviction for conspiracy to maintain a common nuisance without needing to address whether *Perkins* and *Sharp* remain good law. Additionally, due to the vacated conviction, we reduce Garner's sentence from sixteen years to fourteen years.

## II.  Variance

Garner argues that there was a fatal variance between the charging information and the evidence presented at trial as to whether Garner possessed a firearm on the charged date. Pursuant to Indiana Code sections 35-48-1-16.5 and 35-48-4-1.1, possession of a firearm while a person is committing the offense is an enhancing circumstance. In Garner's case, the existence of an enhancing circumstance raises the crime of dealing in methamphetamine from a Level 4 felony to a Level 3 felony. Ind. Code § 35-48-1-16.5.

Under Indiana Code Section 35-34-1-2, an information "shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "The purpose of the charging information is to provide a defendant with notice of the crime of which he is charged so that he is able to prepare a defense." *Gilliland v. State*, 979 N.E.2d 1049, 1060 (Ind. Ct. App. 2012). "The State is under no obligation to include detailed factual allegations; rather, a charging information satisfies due process if it 'enables an accused, the

court, and the jury to determine the crime for which conviction is sought.'" *Elvers v. State*, 22 N.E.3d 824, 832 (Ind. Ct. App. 2014) (quoting *Gilliland*, 979 N.E.2d at 1060).

[17] Generally, the State must prove all of the material allegations in a charging information. *Daniels v. State*, 975 N.E.2d 1025, 1028 (Ind. Ct. App. 2011). "A variance is an essential difference between the allegations of the charging document and the proof at trial." *Id*. at 1030. A variance is material if one of two conditions is satisfied. First, the defendant must have been "misled by the variance in the evidence from the allegations and specifications in the charge in the preparation and maintenance of his defense, and … was harmed or prejudiced thereby." *Id*. Second, there is a risk of a double jeopardy violation in a future criminal proceeding covering the same event, facts and evidence. *Id*. "Put another way, if the variance either misleads the defendant in the preparation of his defense resulting in prejudice or leaves the defendant vulnerable to double jeopardy in a future criminal proceeding covering the same event and evidence, then the variance is fatal." *Broude v. State*, 956 N.E.2d 130, 136 (Ind. Ct. App. 2011).

[18] The State charged:

> On or about March 16, 2016 at 234 Orchard Hill Drive, Tell City, in Perry County, State of Indiana, Brandon L. Garner did knowingly or intentionally conspire to possess with the intent to deliver methamphetamine, pure or adultered, said methamphetamine weighing at least 1 gram, but less than 5 grams and while the said Brandon L[.] Garner was in possession

of a firearm and did perform an overt act in furtherance of the conspiracy, to-wit: did meet with Alicia D[.] Kellems while he physically possessed a quantity of narcotics and she physically possessed tools for measuring, packaging and distributing narcotics.

App. Vol. II, p. 49. Garner argues that at trial the State merely presented evidence that he possessed a firearm while dealing sometime during the two-and-a-half months prior to March 16, 2016 as opposed to on March 16, 2016. Specifically, Garner argues that the State did not present evidence that he possessed the firearms found in the truck in the motel parking lot on March 16, 2016. Garner also asserts that the State did not present evidence that Garner was aware that there was a gun in the motel room on March 16, 2016. In "expanding" the time period during which he allegedly possessed the gun, Garner argues that he was misled and confused as to what criminal activity he needed to prepare a defense for.[1] Appellant's Br. p. 17.

[19] Contrary to Garner's contention, the State presented evidence that Garner actually possessed a firearm on the charged date. When Officer Shadwick knocked on the hotel room door on March 16, 2016, Kellems testified that she

---

[1] Garner also appears to make an argument regarding a jury instruction. The instruction at issue said: "The State is not required to prove that the crime charged was committed on the particular date or during a particular time period alleged in the information." App. Vol. III, p. 93; Tr. Vol. II, p. 176. As Garner did not challenge the instruction prior to this appeal, the issue is waived. *See Griffin v. State*, 16 N.E.3d 997 (Ind. Ct. App. 2014).

passed the firearm to Garner who then threw it out of the window. This testimony is consistent with fact that officers found a loaded handgun directly below the window along with Kellems's and Garner's telephones. This is evidence that Garner actually possessed a firearm on the date the State charged him with being in possession of a handgun while conspiring to deal. Consequently, Garner has failed to establish any fatal variances between the proof and pleading.

## III.   Was Garner's Sentence Inappropriate

[20] Under Indiana Appellate Rule 7(B), "[t]he Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." When reviewing such claims, we "concentrate less on comparing the facts of the [case at issue] to others, whether real or hypothetical, and more on focusing on the nature, extent, and depravity of the offense for which the defendant is being sentence, and what it reveals about the defendant's character." *Paul v. State*, 888 N.E.2d 818, 825 (Ind. Ct. App. 2008) (internal quotes and citations omitted). Garner, as the defendant, bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind. Ct. App. 2008). Garner was originally sentenced to an aggregate sentence of sixteen years for his three convictions. However, due to the fact that we vacated one of his convictions, his sentence has been reduced to fourteen years.

[21]     With respect to the nature of his offenses, Garner was involved in a drug-dealing conspiracy whose scope and activities went far beyond the need to satisfy Garner's own desire to use the drugs. Kellems testified that the "majority" of the drugs that they routinely bought from Louisville were sold. Tr. Vol. II, p. 99. Any remaining drugs were then consumed by Garner and Kellems.

[22]     Garner argues that he was not dealing in methamphetamine to make a profit. Kellems, however, testified that she and Garner bought a truck to further their operation, and purchased guns to protect themselves while they were traveling across state lines to buy large quantities of methamphetamine. This evidence supports a conclusion that Garner was dealing to make a profit. Given the nature of his offense, a fourteen-year sentence does not seem inappropriate.

[23]     Garner's argument regarding his character also fails to show that his sentence is inappropriate.[2] By the age of 23, Garner had accumulated adult convictions for burglary, possession of a synthetic drug, possession of paraphernalia, and intimidation and two convictions for battery resulting in bodily injury. As for his juvenile record, Garner was found to have committed theft twice, burglary, escape, battery resulting in bodily injury, resisting law enforcement, and criminal mischief. Moreover, Garner was already on parole and had been

[2] Garner also claims that he has mental health issues that should be considered as a mitigating factor. There is no evidence from a medical professional to support such claim. Therefore, the trial court was entitled to disregard such claims during sentencing.

sanctioned twice for parole violations at the time that the current offense was committed. Garner has not carried his burden to prove that his sentence was inappropriate in light of his character.

## Conclusion

[24] In sum, we conclude that the conspiracy to maintain a common nuisance conviction must be vacated because Garner's two conspiracy convictions violated the actual evidence test in *Richardson* and his sentence should be reduced to fourteen years. We also hold that there was not a fatal variance between pleading and proof as to whether Garner possessed a firearm on the charged date. Finally, we conclude that Garner has failed to establish that his sentence is inappropriate in light of the nature of his offenses and his character. Thus, we reverse in part and affirm in part.

Najam, J., and Riley, J., concur.